{¶ 1} This is an appeal from the Ottawa County Municipal Court, which denied appellant Cheryl Williams's appeal of her administrative license suspension ("ALS"). For the following reasons, we reverse the decision of the trial court.
 {¶ 2} A brief overview of the facts is as follows. On July 7, 2002, at approximately 1:00 a.m., appellant, Cheryl Williams, was stopped for speeding in Ottawa County, Ohio. Clay Township Police Officer William Schultz was suspicious that appellant was under the influence of alcohol; appellant was ultimately arrested and transported to the Clay Township Police Department for a breath test.
 {¶ 3} Appellant agreed to take the breath test. It is undisputed that she blew into the machine three times and that each test resulted in an "invalid sample" message printed out by the machine. Appellant was then cited as a "refusal" and her license was automatically suspended.
 {¶ 4} On July 11, 2002, appellant entered a not guilty plea to the DUI charge and, subsequently, requested a stay of the license suspension pending a hearing on the ALS appeal. Following a jury trial, the jury found appellant not guilty of driving under the influence of alcohol.
 {¶ 5} The ALS appeal hearing was held on May 19, 2003, and, at its conclusion, the trial court denied the appeal. Appellant then filed an appeal with this court and raises the following assignment of error:
 {¶ 6} "The trial court erred to the prejudice of the defendant-appellant in denying her appeal of the administrative license suspension."
 {¶ 7} Initially, we note that in an evidentiary hearing to determine whether to terminate an ALS, the licensee has the burden of showing, by a preponderance of the evidence, that the actions of the Bureau of Motor Vehicles were taken in error.City of Bryan v. Hudson (June 30, 1995), 6th Dist. No. WM-94-014, citing Andrews v. Turner (1977), 52 Ohio St.2d 31. In an appeal of a trial court's continuation of an ALS pursuant to R.C. 4511.191, the standard of review is "`whether there is some competent, credible evidence to support the lower court's ruling.'" State v. Brown (Aug. 10, 2001), 6th Dist. No. WD-01-011, quoting Metzger v. McCullion (June 15, 1990), 6th Dist. No. L-89-170.
 {¶ 8} In her sole assignment of error, appellant contends that: (1) she established by a preponderance of the evidence that she provided an air sample each time the officer requested; (2) an "invalid sample" reading is not the same as a "refusal"; and (3) appellant's physical inability to produce a sample did not constitute a refusal.
 {¶ 9} The scope of an ALS appeal is limited to whether certain conditions, predicates to the suspension, have not been met. R.C. 4511.191(H)(1)(d)(i) raises the issue of "whether the arrested person refused to submit to the chemical test requested by the officer."
 {¶ 10} Refusal to submit to the chemical test under R.C.4511.191:
 {¶ 11} "appears whenever a preponderance of all the evidence shows that the person who was given the request and advice in the statutory manner and form has thereafter conducted himself in such a way as to justify a reasonable person in the position of the requesting officer to believe that such requested person was capable of refusal and manifested unwillingness to take the test." Andrews v. Turner, 52 Ohio St.2d at paragraph one of the syllabus.
 {¶ 12} Unless there is a refusal to comply with the test instructions, a failure to produce an adequate breath sample is not a refusal to submit to the chemical test upon the request of the arresting officer. (Citation omitted.) Hoffer-Hodge v.Caltridge (Dec. 31, 1998), 2nd Dist. No. 17162. "It is not a refusal if a person is unable to perform the requested act." Id. A person may be unable to produce an adequate breath sample due to a physical condition. Andrews v. Turner at 38, fn. 5. Sufficient evidence of such condition must be presented at the ALS hearing. Bellamy v. BMV (Sept. 5, 1986), 11th Dist. No. 11-082.
 {¶ 13} First, we note that it is undisputed that appellant blew into the machine three times. However, according to the testimony of the arresting officer:
 {¶ 14} "A: Basically, as she was blowing, she would stop and take another breath, almost totally removing the mouth piece from her mouth, back and forth like that during the blowing process.
 {¶ 15} "Q: Okay. And these actions of stop blowing, that was against your instructions?
 {¶ 16} "A: They were. Because after the first time I waited 20 minutes, instructed her again how to do it, told her to get herself mentally ready to do it. I prepared the machine again. When it was ready, I asked her again if she understood, I needed deep lung, to take the deepest breath she could. I didn't want a hard short breath. I wanted a long continuous breath without stopping.
 {¶ 17} "Q: And she didn't do this?
 {¶ 18} "A: She did not."
 {¶ 19} According to the officer, this was the reason he cited her for a "refusal."
 {¶ 20} Appellant contends that the "invalid sample" result was due to the presence of mouth alcohol. The BAC DataMaster operator guide states that an invalid sample may be caused by a subject blowing too hard, saliva droplets, or mouth alcohol. The guide further states that "[u]sually a retest after a short waiting period will result in a valid test."
 {¶ 21} In Ohio, this "short waiting period" has been determined by several Ohio courts, and pursuant to a written policy of the Ohio Department of Health's Bureau of Alcohol and Drug Testing,[1] to mirror the initial 20 minute waiting period. See State v. Gigliotti (Dec. 22, 2000), 6th Dist. No. E-99-081; City of Rocky River v. Papandreas (Mar. 23, 2000), 8th Dist. No. 76132. This, according to case law, eliminates the possibility of residual mouth alcohol, which is a cause of the "invalid sample" reading.
 {¶ 22} In the instant case, the arresting officer testified that he waited 20 minutes between the first and second test. Thus, the "invalid sample" reading was not the result of mouth alcohol. Additionally, there was no evidence presented which would indicate excessive moisture in the sample chamber or that appellant was blowing too hard.
 {¶ 23} Appellant also argues that she was physically unable to provide the breath sample. At the hearing, appellant testified as follows:
 {¶ 24} "Q: Do you have any special medical conditions or problems that might affect your ability to provide the solid blow of air?
 {¶ 25} "A: Right now, I am on Xanax and Premarian for anxieties.
 {¶ 26} "* * *.
 {¶ 27} "Q: * * *. All right. Do you still have that or at the time of your breath test in this case, did you have that same problem?
 {¶ 28} "A: Yes.
 {¶ 29} At that point, appellant admitted into evidence a note from her physician stating because appellant suffers from "extreme anxiety" resulting in shortness of breath; she was unable to use the breathalyzer.
 {¶ 30} Appellant further testified:
 {¶ 31} "Q: Have you had any surgeries?
 {¶ 32} "A: Yes, I have.
 {¶ 33} "Q: What sort of surgeries have you had?
 {¶ 34} "A: Esophageal. I have had three of them.
 {¶ 35} "Q: All right. What, if any, effect does that have on your breathing ability?
 {¶ 36} "A: I feel it just doesn't give me the capacity, it hurts. When I take deep breaths, it caused me pain.
 {¶ 37} "Q: If you were to try and blow up a balloon, would that give you any problems?
 {¶ 38} "A: Yes, it would.
 {¶ 39} "Q: What sort of problems would that give you?
 {¶ 40} "A: I would have to stop often and take a breath of air."
 {¶ 41} During cross — examination, appellant testified:
 {¶ 42} "Q: * * *. Did you tell [the officer] any details about these surgeries so that he could decide if he was going to give you the breath test or an alternate means of testing?
 {¶ 43} "A: I tried to.
 {¶ 44} "Q: What do you mean, you tried to?
 {¶ 45} "A: I tried to tell him that I had surgeries, I am a smoker. He said he didn't care. He knew someone who smoked three packs of cigarettes a day and still could do it."
 {¶ 46} The officer then testified:
 {¶ 47} "Q: * * * Cheryl did tell you that night that she had had surgery, did she not?
 {¶ 48} "A: She said she had had some kind of surgery.
 {¶ 49} "* * *.
 {¶ 50} "Q: What did she tell you exactly?
 {¶ 51} "A: She said she was having difficulty.
 {¶ 52} "Q: If I approach the witness, Your Honor, you made a report regarding this?
 {¶ 53} "A: I did.
 {¶ 54} "Q: The portion at the bottom here, you made a notation of the statements she made to you that night?
 {¶ 55} "A: Okay.
 {¶ 56} "Q: What did you write in the report?
 {¶ 57} "A: That she said she is a two-pack-a-day smoker and had some kind of surgery that prevents a long consistent breath.
 {¶ 58} "Q: Do you have any reason to believe that that was not true?
 {¶ 59} "A: No, sir."
 {¶ 60} At the conclusion of the hearing, the trial court denied the appeal. In making its decision, the court relied on the Ohio Driving Under the Influence Law handbook by Judge Mark P. Painter. Specifically, the court found "persuasive" Judge Painter's interpretation of an Ohio case captioned State v.Koziol (Aug. 29, 1997), 11th Dist. No. 96-L-193. From the 2003 Edition, the trial court quoted: "`Even blowing improperly into a breathalyzer machine and feeling chest pains, which pains required medical attention on the third attempt has been held by one Court to result in documentation of refusal.'"
 {¶ 61} Upon review of Koziol, we find that the trial court's reliance was misplaced. In Koziol, the issue on appeal was whether the appellant consented to a blood alcohol test, following an unsuccessful breath test. The court, in its recitation of facts, merely noted that the arresting officer had documented a refusal to submit to the breath test.
 {¶ 62} In the present case, appellant, at the time she was asked to submit to the breath test, complained that she was having difficulty and told the officer that she had had surgery which "prevented a long consistent breath." At the ALS appeal hearing, appellant testified regarding her esophageal surgeries and about the anxiety medication she was taking at the time of her arrest; she presented a note from her physician evidencing her condition. The arresting officer even indicated that he had no reason to disbelieve appellant.
 {¶ 63} Based on all the above facts, we conclude that appellant has shown, by a preponderance of the evidence, that she did not refuse to take the breath alcohol test. We further find that the trial court's decision was not supported by competent, credible evidence, and, accordingly, that appellant's assignment of error is well-taken.
 {¶ 64} On consideration whereof, we find that the judgment of the Ottawa County Municipal Court is reversed and the case is remanded to the trial court to vacate the administrative license suspension. Costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., ArleneSinger, J. CONCUR.
[1] The December 14, 1998 policy, though without the force of a statute or regulation, is illuminating. Quoted in State v.Reiger, 5th Dist. No. 02CA30, 2002-Ohio-6673, ¶ 10, the relevant portion reads:
"`Effective immediately an "invalid sample" indication on the BAC Verifier or BAC Datamaster is to be handled by initiating a new 20 minute observation period. The reason for this change is due to the fact that "invalid sample" may be caused by different things. The operator will not longer have to decide exactly what may have caused the "invalid sample," the remedy will always be a new observation period.'"