[Cite as *State v. Hair*, 2022-Ohio-229.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo           Court of Appeals No. L-21-1185

       Appellee                        Trial Court No. TRC-21-09669

v.

Christopher G. Hair                **DECISION AND JUDGMENT**

       Appellant                    Decided: January 28, 2022

\* \* \* \* \*

David L. Toska, City of Toledo Chief Prosecuting Attorney, and
Christopher D. Lawrence, Assistant Prosecuting Attorney, for appellee.

Christopher G. Hair, Pro se

\* \* \* \* \*

**PIETRYKOWSKI, J.**

{¶ 1} In this accelerated appeal, appellant, Christopher G. Hair, appeals the

judgment of the Toledo Municipal Court, which denied appellant's appeal of his

administrative license suspension. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On July 10, 2021, a criminal complaint was entered against appellant, charging him with operating a vehicle under the influence ("OVI") in violation of R.C. 4511.19. Along with the criminal complaint, an administrative license suspension was imposed upon appellant for refusing to comply with a request for a chemical breath test.

{¶ 3} On July 12, 2021, appellant requested a hearing on his administrative license suspension.

{¶ 4} On September 7, 2021, the matter was called for the hearing on the administrative license suspension, as well as for the trial on the charge of OVI. At the start of the hearing, defense counsel noted that appellant had filed a demand for a jury trial earlier that day. Defense counsel requested that the court consider the jury demand, and then requested that the hearing proceed on the administrative license suspension. The court denied appellant's untimely demand for a jury trial, but ultimately did continue the trial date over uncertainty regarding whether a 911 call existed and could be provided to appellant at his request. After a new trial date was set, defense counsel inquired, "Are we proceeding on the ALS today?" The court responded, "Certainly can," to which defense counsel replied, "I think we have an officer here. We might as well." The court then affirmed that the defense was ready to proceed on the administrative license suspension before testimony was taken, and appellant offered no objection.

2.

{¶ 5} Toledo Police Officer Ramiro Melendez testified for the state. Melendez testified that on July 10, 2021, he responded to a dispatch call of a person down on Detroit Avenue in Toledo, Ohio. When Melendez arrived at the scene, he observed a white station wagon sitting at a traffic light, not moving, even though the light was green. Inside of the station wagon, appellant was unconscious behind the wheel. Melendez testified that he and other officers knocked loudly on the windows and shined lights into the vehicle, but appellant did not respond. Having determined that the vehicle was still running and in drive, the officers broke the window to put the vehicle in park and to assist appellant. Appellant remained unresponsive as the officers broke the window.

{¶ 6} Melendez testified that as the officers moved appellant, he began to wake up. Melendez described appellant as confused and unaware of what was happening. When the officers removed appellant from the vehicle, appellant was unstable on his feet. Melendez further described detecting a strong smell of alcohol, and observing that appellant had slurred speech and was speaking incoherently. Melendez then conducted field sobriety tests, which appellant failed. At that point, Melendez determined that appellant was suspected of operating the vehicle under the influence, and transported him to the Ohio State Highway Patrol station to conduct a breathalyzer test.

{¶ 7} At the station, Melendez provided a copy of BMV Form 2255 to appellant and read the form to him, explaining the consequences of refusing to submit to the breathalyzer test. Melendez testified that appellant was then given "plenty of

3.

opportunities to blow." Melendez described that appellant said he was trying to blow, but the machine was not reading anything, which indicated that appellant was not blowing into the tube. Melendez testified that in his experience from his training, it is not difficult to blow into the machine. Thus, he concluded that the machine's failure to provide a result was because appellant was intentionally trying not to blow. As a result, Melendez determined that appellant refused to submit to the breathalyzer test.

{¶ 8} On cross-examination, Melendez was asked whether appellant offered to do a urine test or blood test, and Melendez denied appellant ever making that offer. Melendez also was asked and testified that he was not a doctor, and he was unaware of any medical issues that may have made appellant unable to blow into the machine.

{¶ 9} Following the state's presentation of evidence, appellant rested without calling any witnesses or offering any exhibits. The trial court then announced its findings. The court found, in relevant part,

> Final is whether the defendant did refuse said test. The test offered was the breath test. The officer indicated that you agreed to take the test, but when the test was offered that you made motions that you were attempting to blow into the machine but that no air was getting into the machine. Indeed, the Exhibit B indicates triple zeros on the test sample. And so the officers came to the conclusion that you were just pretending to blow, puffing out cheeks and pretending to blow. Certainly, your conduct

4.

and cooperation at the time that the test is offered can be considered and constitute a refusal to take the breath test.

I do find, based on the officer's testimony, that the fact that he believed you were just pretending to blow into the machine, not actually blowing into the machine that was cycling properly, and that the triple zeros on State's Exhibit B would indicate that as well. So your failure to cooperate in the court's mind did constitute a refusal; therefore, your motion to vacate the ALS suspension is denied.

The trial court's written judgment was journalized that same day.

{¶ 10} Thereafter, appellant moved to reopen his appeal so that he could present additional evidence. The trial court denied appellant's motion on September 16, 2021.

## II. Assignments of Error

{¶ 11} Appellant has timely appealed the trial court's September 7, 2021 judgment denying his administrative license suspension appeal, and now presents two assignments of error for our review:

1. Trial court committed prejudice err (sic) by violating defendant's due process rights when it held an ALS hearing without allowing the defendant to review all evidence that could provide proof all conditions of R.C. 4511.197(C) were not met.

2.  Trial court committed prejudical err by abusing it's discretion by not adhering to the clear and plain meaning of appicable statue governing what constitues an refusal of submitting to a chemical test (sic).

{¶ 12} Appellant addresses his assignments of error in reverse order, and we will do the same.

### III. Analysis

### A.  Refusal to Submit to a Chemical Test

{¶ 13} In his second assignment of error, appellant argues that the trial court misinterpreted R.C. 4511.197(C) when it determined that appellant refused to submit to chemical testing.  Relevant here, R.C. 4511.197(C) provides,

If a person appeals a suspension under division (A) of this section, the scope of the appeal is limited to determining whether one or more of the following conditions have not been met:

(1) Whether the arresting law enforcement officer had reasonable ground to believe the arrested person was operating a vehicle, streetcar, or trackless trolley in violation of division (A) or (B) of section 4511.19 of the Revised Code or a municipal OVI ordinance * * * and whether the arrested person was in fact placed under arrest;

(2) Whether the law enforcement officer requested the arrested person to submit to the chemical test or tests designated pursuant to division (A) of section 4511.191 of the Revised Code;

(3) * * * [I]f the person was under arrest other than as described in division (A)(5) of section 4511.191 of the Revised Code, whether the arresting officer informed the arrested person of the consequences of refusing to be tested or of submitting to the test or tests;

(4) Whichever of the following is applicable:

(a) If the suspension was imposed under division (B) of section 4511.191 and section 4511.192 of the Revised Code, whether the arrested person refused to submit to the chemical test or tests requested by the officer.

Specifically, appellant contends that he did not refuse to submit to the chemical test as stated in R.C. 4511.197(C)(4)(a).

{¶ 14} Appellant initially frames his argument to suggest that the trial court erred in its interpretation of R.C. 4511.192(A), which provides that a person "must submit to the chemical test or tests, subsequent to the request of the arresting officer, within two hours of the time of the alleged violation and, if the person does not submit to the test or tests within that two-hour time limit, the failure to submit automatically constitutes a refusal to submit to the test or tests." Appellant claims that he submitted to taking the

7.

requested test within two hours, and thus there was no automatic refusal, and the administrative license suspension was contrary to law. However, appellant's argument is based on the presupposition that he submitted to taking the test, and whether or not appellant submitted to taking the test is the factual determination that is the ultimate issue in this appeal.

{¶ 15} In the trial court below, appellant had "the burden of proving, by a preponderance of the evidence, that one or more of the conditions specified in division (C) of this section has not been met." R.C. 4511.197(D); *State v. Mallin*, 6th Dist. Ottawa No. OT-06-040, 2007-Ohio-4476, ¶ 26. Relevant here, the trial court examined the evidence and found that appellant's conduct constituted a refusal under R.C. 4511.197(C)(4)(a). "It is well established that the standard of review on a disputed continuation of an ALS is 'whether there is some competent, credible evidence to support the lower court's ruling.'" *Mallin* at ¶ 26, quoting *State v. Williams*, 6th Dist. Ottawa No. OT-03-020, 2004-Ohio-2453, ¶ 7.

{¶ 16} "The fact of refusal to take the chemical test provided for in R.C. 4511.191 appears whenever a preponderance of all the evidence shows that the person who was given the request and advice in the statutory manner and form has thereafter conducted himself in such a way as to justify a reasonable person in the position of the requesting officer to believe that such requested person was capable of refusal and manifested

8.

unwillingness to take the test." *Andrews v. Turner*, 52 Ohio St.2d 31, 368 N.E.2d 1253 (1977), paragraph one of the syllabus.

{¶ 17} Appellant argues that he did not refuse to take the test, noting that he made several attempts to blow into the breathalyzer machine. Appellant further explains that the "triple zeros" resulting from his sample is consistent with his multiple statements to the officers that he had not consumed any alcoholic beverages.

{¶ 18} The state, on the other hand, argues that the evidence shows that appellant was given several opportunities to submit a breath sample, but failed to do so. Further, Melendez testified that "whenever [the breathalyzer machine] comes with zero readings, that means that the defendant, or whoever is blowing into the machine, is not blowing, actually blowing into it." According to Melendez, that person is "intentionally trying not to blow."

{¶ 19} Upon review, we find that the trial court's decision is supported by competent, credible evidence. We initially note that despite bearing the burden to prove that he did not refuse to take the test, and despite vaguely alluding to a medical condition that would have prevented him from providing a breath sample, appellant presented no evidence that he did not refuse to take the test. *Compare with Williams* at ¶ 62 (defendant complained at the time of the test that she was having difficulty and told the officer that she had surgery which prevented a long consistent breath; defendant testified at the ALS hearing regarding her esophageal surgeries and the anxiety medication she was taking;

9.

defendant presented a note from her physician stating that she suffers from extreme anxiety that produces shortness of breath and prevents her from using the breathalyzer; and the arresting officer testified that he had no reason to disbelieve the defendant). Furthermore, we find Melendez's testimony to be credible that appellant was not actually blowing into the breathalyzer. Therefore, we hold that the trial court did not err when it upheld appellant's administrative license suspension.

{¶ 20} Accordingly, appellant's second assignment of error is not well-taken.

## B. Due Process

{¶ 21} In his first assignment of error, appellant argues that his due process rights were violated when the trial court held the administrative license suspension hearing without allowing appellant to review all of the evidence.

{¶ 22} At the outset, we note that appellant did not object to the trial court holding the administrative license suspension hearing, nor did appellant move for a continuance of the hearing. In fact, appellant, through his counsel, *requested that the court hold the hearing*. As such, appellant's argument falls squarely within the invited-error doctrine. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State v. Brown*, 6th Dist. Lucas No. L-20-1052, 2021-Ohio-1674, ¶ 33, quoting *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 254, 648 N.E.2d 1355 (1995). "Under this principle, a party cannot complain of any action taken or ruling made by the court in accordance with that party's

10.

own suggestion or request." *Id.*, quoting *Daimler/Chrysler Truck Fin. v. Kimball*, 2d Dist. Champaign No. 2007-CA-07, 2007-Ohio-6678, ¶ 40. Therefore, appellant is foreclosed from arguing that the trial court erred in holding the administrative license suspension hearing.

{¶ 23} Moreover, even if we were to consider the issue, appellant has failed to demonstrate that his due process rights were violated. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). "'[D]ue process' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. * * * (D)ue process is flexible and calls for such procedural protections as the particular situation demands." (Internal citations omitted) *Id.* at 334.

{¶ 24} Here, appellant asserts that he was not able to review the 911 call that led to the officers being dispatched to appellant's location. Appellant fancifully suggests that if the 911 call had been available, then an unspecified "medical ailment" would have been identified, and the officers would have lacked probable cause to suspect appellant of operating the vehicle while intoxicated. However, appellant fails to explain how the content of the 911 call would have overcome or even called into question the evidence that appellant was found passed out behind the wheel of a running car, that he was

disoriented, had slurred speech, was unsteady on his feet, was emitting a strong odor of alcohol, and failed all of the field sobriety tests, all of which overwhelmingly supported the condition in R.C. 4511.197(C)(1) that Melendez had reasonable grounds to believe that appellant was operating the vehicle under the influence. Therefore, we hold that appellant had a meaningful opportunity to be heard, and his due process rights were not violated when the trial court proceeded with the administrative license suspension hearing despite appellant not having the 911 call.

{¶ 25} Accordingly, appellant's first assignment of error is not well-taken.

## IV.  Conclusion

{¶ 26} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.     _____
                JUDGE

Thomas J. Osowik, J.

                _____
Myron C. Duhart, P.J.      JUDGE
CONCUR.

                _____
                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.