[Cite as *State v. Wyse*, 2023-Ohio-3550.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-22-1129

      Appellee                                          Trial Court No.  CR0202102445

v.

Paul Wyse                                             **DECISION AND JUDGMENT**

      Appellant                                          Decided:  September 29, 2023

* * * * *

Julia R. Bates, Lucas Count Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Henry Schaefer, for appellant.

* * * * *

**SULEK, J.**

{¶ 1} Appellant Paul Wyse appeals the judgment of the Lucas County Court of

Common Pleas convicting him, following a jury trial, of one count of having a weapon

under disability in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree.

For the reasons that follow, the judgment is affirmed.

# I. Facts and Procedural Background

{¶ 2} On September 13, 2021, the Lucas County Grand Jury entered a three-count indictment against Wyse, charging him with one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) and (I), one count of receiving stolen property in violation of R.C. 2913.51(A) and (C) with an attendant firearm specification, and one count of heaving a weapon while under disability in violation of R.C. 2923.13(A)(2) and (B). Wyse pleaded not guilty, and the matter proceeded to a jury trial.

{¶ 3} Prior to jury selection, the state dismissed the charge of receiving stolen property. In addition, the parties stipulated that Wyse had a prior qualifying violent felony offense for purposes of proving Wyse's disability on the count of having a weapon while under disability.

{¶ 4} During the trial, Toledo Police Sergeant Reuben Jurva testified that on July 26, 2021, he was assigned to the Northern Ohio Violent Fugitive Task Force. On that same day, the task force received a tip that Wyse had an outstanding warrant and was going to be attending a funeral at the House of Day Funeral Home. Jurva and several other members of the task force conducted surveillance of the funeral home and the subsequent trip to the cemetery. Through this surveillance, Wyse was seen leaving the cemetery as a front-seat passenger in a gray or silver Chrysler 200 being driven by another individual. Jurva and the other task force members conducted a vehicle containment technique stop of the car, wherein the car was surrounded on all four sides.

**{¶ 5}** Jurva and his partner, Toledo Police Sergeant William Shaner, were in the vehicle behind the suspect car. As Jurva approached the passenger side of the car, he observed Wyse making "furtive movements" toward the floorboard of the vehicle. Jurva described the furtive movement as "a secretive or sly movement consistent with trying to conceal something, in this case it was a handgun." Wyse complied with Jurva's commands to exit the vehicle and he was placed under arrest.

**{¶ 6}** Jurva testified that Shaner patted down Wyse and discovered an empty plastic Kydex gun holster in Wyse's waistband on his right hip. Once the holster was found, Shaner searched the passenger area of the car and found a gun in a bag located on the floorboard by the front passenger seat where Wyse was sitting. The gun was loaded and was later determined to be operable. Jurva testified that the Kydex holder was molded or formed to fit this particular gun. On cross-examination Jurva testified that the gun was not swabbed for DNA by the Ohio Bureau of Criminal Investigation ("BCI") because it was not being used in the commission of a violent crime and therefore did not meet BCI's standards for conducting the analysis.

**{¶ 7}** Sergeant Shaner also testified about his interaction with Wyse. He stated that immediately upon making the vehicle containment technique stop of the suspect car he noticed Wyse making furtive movements towards the floorboard of the vehicle. Shaner explained in more detail that as he pulled up, he noticed that Wyse's attention had been drawn to the car in front of him and that Wyse had a surprised look. Immediately thereafter, Wyse reached down to the floorboard of the car.

3.

**{¶ 8}** After Wyse was handcuffed, Shaner conducted a search of Wyse's person. Shaner found the plastic Kydex gun holster concealed in Wyse's waistband on his right side. Upon finding the holster, Shaner searched the floorboard area where Wyse had been reaching and found a Gucci style bag on the front-passenger floorboard that was about one-quarter of the way unzipped. Inside of the bag was the loaded handgun. Shaner demonstrated for the jury how the gun slipped perfectly into the Kydex holster and clicked into place.

**{¶ 9}** When asked about the testing that was performed on the handgun, Shaner testified that the gun was test-fired to confirm that it was operable. He added that the gun was also examined for fingerprints and swabbed for DNA by an evidence technician for the Toledo Police Department. According to Shaner, no fingerprints were found on the gun and the DNA was not accepted by BCI for analysis.

**{¶ 10}** On cross-examination, Shaner was asked if any reports were generated from the technician's examination of the gun. Shaner agreed that reports were generated. At that point, Wyse moved for a mistrial, asserting that the reports had not been provided to him in discovery. At issue was a "Request for Analysis" form submitted by Shaner requesting that the gun be test fired. The day before Shaner's testimony, he became aware of a copy of the form that included additional handwritten information that was not on the form provided to Wyse in discovery. The handwritten information, located under the section "To be filled out by CISU Personnel Only," detailed that the handgun was received on July 27, 2021. The handwritten portion of the form stated, "magazine

4.

downloaded prior to SIU receiving evidence," "15 rounds of ammunition," "no useable prints," and "slight rust on firearm." In addition, in the same section, the form indicated that the evidence was swabbed for DNA on July 27, 2021, in the areas of the gun body, trigger, magazine, and all 15 bullets.

{¶ 11} Wyse argued that had the evidence been disclosed in discovery, he could have pursued an entirely different defense strategy. As it stood, Wyse argued in part that the investigation conducted by the police was incomplete or shoddy in that the police did not try to find fingerprints or test for DNA. With this new evidence, Wyse argued that the state could now say that the investigation was thorough in that the police tested for fingerprints but found none and swabbed for DNA but were not allowed to submit the swabs for analysis pursuant to BCI protocols. Wyse contended that, had the information been provided to him, he could have obtained his own fingerprint or DNA expert to testify that it was possible to extract that kind of evidence from the gun. Further, Wyse asserted that the evidence may have been exculpatory and shown that someone other than Wyse possessed the gun.

{¶ 12} Upon consideration of Wyse's arguments, the trial court denied his motion for a mistrial, finding that the state's untimely disclosure of the form containing the handwritten notes was not willful because neither Shaner nor the prosecutors knew of the form's existence until the day before Shaner testified about it. The trial court also found that the untimely disclosure did not prejudice Wyse in that Wyse's trial strategy had been to deny ownership of the gun by relying on the facts that his fingerprints were not on the

5.

gun and there was no DNA evidence tying him to the gun. The handwritten information on the form bolstered Wyse's arguments. In addition, the court noted that nothing prevented Wyse from obtaining further inspection or expert analysis of the gun prior to the trial. Finally, the trial court found that it was still possible to have a fair trial because Wyse now had the report and Shaner was still on the witness stand on cross-examination.

{¶ 13} After resuming cross-examination, Wyse presented a photograph of the family taken at the funeral. Shaner identified that the driver of the suspect car was seen in the photograph carrying the Gucci bag with the strap around his chest.

{¶ 14} Following Shaner's testimony, the state rested. Wyse moved for an acquittal pursuant to Crim.R. 29(A), which the trial court denied.

{¶ 15} Wyse then called his sister, Revlon Wyse, as a witness. Revlon testified that Wyse came in from California for their uncle's funeral and that he stayed with her while he was in town. Revlon drove Wyse to the funeral and the cemetery, but left early from the cemetery. She stated that she never saw Wyse in possession of a gun or the Gucci bag. She did, however, see her cousin, the driver of the suspect vehicle, wearing the Gucci bag.

{¶ 16} Finally, Wyse testified in his own defense. He stated that he returned to Toledo in June 2021 to see his new daughter who was born on June 3, 2021, and also to address the warrant that was out for his arrest. While he was in Toledo, his uncle passed away, which delayed him from addressing the warrant.

6.

{¶ 17} Wyse stated that after the funeral, he rode back with his cousin in the silver Chrysler 200. Wyse and the cousin had been drinking and the two were dancing in the car to one of his uncle's favorite songs when the police approached. Wyse testified that his dancing could not be mistaken for making a movement towards the floorboard. Wyse also stated that he was playing the music through his phone which was out of his pocket, and he entered into evidence photographs of a cell phone case that clips onto a person's belt. Wyse testified that he was wearing the case at that time. Wyse denied ever having or possessing the gun, the gun holster, or the Gucci bag. On cross-examination, Wyse stated that the police pulled the gun and holster out together from the car and then lied about finding the holster on him.

{¶ 18} Following Wyse's testimony, the defense rested. After closing arguments and jury instructions, the jury retired to deliberate. Ultimately, the jury returned with a verdict finding Wyse not guilty on the count of improperly handling a firearm in a motor vehicle and guilty on the count of having a weapon while under disability.

{¶ 19} At sentencing, the trial court placed Wyse on community control for a period of one year, with a condition that Wyse serve 90 days in the Correction Center of Northwest Ohio with credit for 86 days served. Upon completion of that 90-day term, Wyse's community control would be terminated.

## II. Assignments of Error

{¶ 20} Wyse has timely appealed his judgment of conviction and now asserts three assignments of error:

> 1. The court erred when it failed to grant Mr. Wyse's motion for a mistrial.
>
> 2. The verdict was against the manifest weight of the evidence.
>
> 3. Mr. Wyse was deprived of his right to trial by jury when his counsel stipulated to his prior conviction.

## III. Analysis

{¶ 21} Wyse's assignments of error will be addressed out of order, beginning with his third assignment of error.

### A. Right to Trial by Jury

{¶ 22} In his third assignment of error, Wyse argues that his constitutional right to a jury was violated when counsel stipulated that Wyse had a prior qualifying violent felony conviction that precluded him from owning or possessing a firearm in Ohio.[1] While Wyse acknowledges that stipulations are permissible and juries have been correctly instructed to accept the stipulated facts as proven, Wyse urges this court to adopt the reasoning from the concurring opinion in *State v. McCullough*, 3d Dist. Putnam

---

[1] Although Wyse entered into the stipulation, he nonetheless testified on direct examination regarding his prior conviction and the facts surrounding it.

8.

No. 12-07-09, 2008-Ohio-3055, ¶ 45-58 (Rogers, J., concurring in part and dissenting in part).

{¶ 23} In *McCullough*, the defendant stipulated to prior convictions that increased the level of his domestic violence charge from a first-degree misdemeanor to a third-degree felony. The concurring opinion viewed the defendant's stipulation as tantamount to waiving his rights against compulsory self-incrimination, to trial by jury, and to confront his accusers as to the prior convictions. *Id.* at ¶ 54. Thus, the concurring opinion would have required that the trial court conduct a Crim.R. 11 colloquy with the defendant prior to agreeing to such a stipulation to ensure that the defendant's decision was knowingly, intelligently, and voluntarily made. *Id.* at ¶ 54-55.

{¶ 24} In the 15 years since the concurring opinion in *McCullough*, no Ohio court has adopted its reasoning. Indeed, rather than being tantamount to a guilty plea, a stipulation—and in particular a stipulation to a prior qualifying violent felony conviction that precludes the defendant from owning or possessing a firearm—is an alternate form of evidence used to prove a fact. *See State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981, ¶ 24, quoting *Old Chief v. U.S.*, 519 U.S. 172, 186, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ("[T]he defendant's formal offer to stipulate that he had been convicted of a felony subject to a prison sentence of more than one year 'amounted to an offer to admit that the prior-conviction element was satisfied, and a defendant's admission is, of course, good evidence.'").

9.

{¶ 25} Since Wyse was not pleading guilty, the trial court was not required to conduct a Crim.R. 11 colloquy with Wyse before accepting his stipulation, and the acceptance of the stipulation did not violate Wyse's constitutional right to a jury trial. Accordingly, Wyse's third assignment of error is not well-taken.

### B. Motion for a Mistrial

{¶ 26} In his first assignment of error, Wyse argues that the trial court abused its discretion when it denied his motion for a mistrial following the mid-trial discovery of the state's failure to timely disclose the existence of a form indicating that the handgun had been checked for fingerprints and swabbed for DNA.

{¶ 27} It is uncontested that the state committed a discovery violation under Crim.R. 16. Pursuant to Crim.R. 16(L)(1), "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

{¶ 28} "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus; *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, syllabus.

10.

Mistrials should be granted "only when justice requires and a fair trial is no longer possible." *State v. Madison*, 160 Ohio St.3d 232, 2020-Ohio-3735, 155 N.E.3d 867, ¶ 196, citing *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 89; *State v. Lopez*, 6th Dist. Lucas No. L-06-1243, 2007-Ohio-5473, ¶ 18.

{¶ 29} "The remedy a trial court elects to employ for a discovery violation as well as the decision to grant or deny a mistrial is within the sound discretion of the court and will not be reversed absent an abuse of that discretion." *Lopez* at ¶ 18; *Darmond* at ¶ 33. An abuse of discretion connotes that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 30} Three factors should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution: "(1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *Darmond* at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), syllabus; *Lopez* at ¶ 20.

{¶ 31} Here, the trial court found that the state's failure to disclose was not a willful violation. In *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 116, the Ohio Supreme Court held that the state's failure to provide written summaries of the defendant's oral statements was not a "*willful* discovery violation" because the prosecution had engaged in "no intentional withholding of the information." (Emphasis sic.).

11.

{¶ 32} In the same way, there is no evidence in this case that the state willfully withheld the existence of the form containing the handwritten information. Shaner testified that he turned over the copy of the form that he received back with the handgun after its testing, and that copy did not include the handwritten information. Shaner, and by extension the prosecutor, only became aware of the existence of the other version of the form on the day before his testimony.

{¶ 33} The trial court also found that foreknowledge of the material would not have benefited Wyse in the preparation of his defense. The court noted that the handwritten information actually bolstered Wyse's arguments in that his fingerprints were not on the gun and there was no DNA information because the swabs were not sent for testing. On appeal, Wyse argues that part of his defense was that the state failed to conduct a thorough investigation, which was undermined by the version of the form showing that the police did in fact check for fingerprints and DNA. Wyse contends that had he known about the form, he could have pursued expert testimony that said fingerprints and DNA should have been easy to obtain and could have exonerated him. As the trial court correctly noted, however, the gun was safely stored and available to Wyse for fingerprinting or DNA testing during the time leading up to the trial, yet Wyse made no efforts to obtain such testing.

{¶ 34} Finally, the trial court found that Wyse was not prejudiced. The handwritten notations did not contain any inculpatory evidence, but instead confirmed that Wyse's fingerprints were not on the gun and no DNA was tested to link him to the

12.

gun. Further, Shaner was still on the witness stand and Wyse had an opportunity to cross-examine him regarding the handwritten notations on the form.

{¶ 35} Considering these factors, the trial court concluded that the state's discovery violation did not warrant a mistrial because a fair trial was still possible. Upon review, the trial court's decision was the result of its measured, deliberate reasoning and was neither arbitrary, unreasonable, nor unconscionable. Therefore, the trial court's denial of Wyse's motion for a mistrial was not an abuse of discretion.

{¶ 36} Wyse's first assignment of error is not well-taken.

## C. Manifest Weight

{¶ 37} Finally, in Wyse's second assignment of error, he argues that his conviction for having a weapon under disability is against the manifest weight of the evidence.

{¶ 38} In determining whether a conviction is against the manifest weight of the evidence, an appellate court, sitting as a "thirteenth juror," reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

13.

{¶ 39} Wyse was convicted of having a weapon while under disability in violation of R.C. 2923.13(A)(2), which provides, "Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * (2) The person is under indictment for or has been convicted of any felony offense of violence * * *."

{¶ 40} He first argues that the jury was confused and lost its way as evidenced by its inconsistent decision to find Wyse guilty of having a weapon while under disability but not guilty of improperly handling firearms in a motor vehicle.

{¶ 41} However, "different findings as to multiple counts in an indictment do not equal an inconsistent verdict." *State v. Nastal*, 6th Dist. Wood No. WD-21-042, 2022-Ohio-970, ¶ 35, citing *State v. Lovejoy*, 79 Ohio St.3d 440, 446, 683 N.E.2d 1112 (1997). "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *Lovejoy* at 446, quoting *State v. Adams*, 53 Ohio St.2d 223, 374 N.E.2d 137 (1978), paragraph two of the syllabus.

{¶ 42} Thus, whatever reasons the jury had in finding Wyse not guilty on the count of improperly handling firearms in a motor vehicle are not relevant. The sole focus of the inquiry is whether, based upon all of the evidence and reasonable inferences therefrom, the jury clearly lost its way in finding Wyse guilty of having a weapon under disability.

14.

{¶ 43} Here, Jurva and Shaner testified that they had no prior knowledge of or relationship to Wyse. In addition, they waited for several hours, until after the funeral service at the cemetery to arrest Wyse out of respect for the deceased and his family. Once they initiated the stop of Wyse, they observed him appearing surprised and making furtive movements towards the floor of the car. Upon apprehending Wyse, Shaner discovered a molded gun holster inside of Wyse's waistband. The holster perfectly matched the gun that was found in a partially open bag located on the floorboard by where Wyse was sitting.

{¶ 44} Offering an alternative explanation of that day's events, Wyse testified that he was simply dancing in the car, did not make any movements towards the floor of the car, and when he was arrested Shaner took the gun and the holster out of the bag and planted the holster on him.

{¶ 45} Upon a review of the record as the thirteenth juror, this is not the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice in resolving the conflicts in the evidence. Jurva's and Shaner's lack of motivation for framing Wyse and their conduct in showing respect for the deceased and his family, contrasted with Wyse's motivation to avoid liability for his criminal conduct, supports the jury's conclusion that Jurva's and Shaner's versions of the events were true and Wyse's version of the events was false. Wyse's possession of a molded gun case in his waistband that perfectly matches a gun that was located on the floor next to where he was seated is strong evidence that he knowingly had or carried a firearm. Further, it was

stipulated that Wyse was under a disability. Therefore, the jury's verdict finding Wyse guilty of having a weapon under disability is not against the manifest weight of the evidence.

{¶ 46} Accordingly, Wyse's second assignment of error is not well-taken.

## IV. Conclusion

{¶ 47} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Wyse is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____
                                                            JUDGE
Myron C. Duhart, P.J.

                                         _____
Charles E. Sulek, J.                                    JUDGE
CONCUR.

                                         _____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.