[Cite as *State v. Ambrozy*, 2023-Ohio-3961.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                    Court of Appeals No.  OT-22-060

　　　Appellee                                 Trial Court No.  TRC 2104267 A

v.

Alma K. Ambrozy                          **DECISION AND JUDGMENT**

　　　Appellant                               Decided:  October 27, 2023

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Blake W. Skilliter, Assistant Prosecuting Attorney, for appellee.

Brianna L. Stephan, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of a November 29, 2022 judgment of the Ottawa County

Municipal Court, granting appellee's motion in limine to exclude a 1998 Ohio

Department of Health memorandum from appellant's trial on one count of operating a

motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(d),

a misdemeanor of the first degree. Following a jury trial, appellant was found guilty and the trial court sentenced appellant to 120 days in jail, with 90 days suspended. The court further ordered an alcohol dependency evaluation and the completion of a six-day driver intervention program. This appeal ensued. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Alma J. Ambrozy, sets forth the following sole assignment of error:

> The Trial Court abused its discretion by excluding evidence relevant
> to the accuracy and reliability of the specific test results underlying the
> charges in this case and otherwise helpful to the trier of fact in
> understanding evidence introduced by the State.

**Facts**

{¶ 3} It was a very dark Halloween evening in 2021 just past ten o'clock when a Port Clinton police sergeant was on patrol. The city was generally quiet. Sergeant Evan Holtz was nearing the end of his shift at 11p.m. when he approached the intersection of West 2nd Street near Monroe Street in the downtown area of Port Clinton, Ohio. Under the streetlights of the evening appeared a tan Chevrolet SUV. It had no illuminated taillights. Obviously, he was confronted with a hazardous situation that necessitated police intervention. He activated the overhead lights and closed in behind the vehicle. The sergeant would be working late. The SUV promptly pulled over to the side of the road in the 100 block of East 2nd Street near Madison Street. It stopped in a crooked

2.

manner between two parallel parking spots. After the stop, Sergeant Holtz exited his patrol car and approached the vehicle. He quickly observed that the front headlights of the SUV were also not illuminated.

{¶ 4} Appellant, the sole occupant of the vehicle, was the driver. Appellant asked why she was being pulled over. Sergeant Holtz told her that the taillights were not on. Without hesitation, appellant turned on her lights, immediately illuminating the front headlights and rear taillights. On this All Hallow's Eve, it was apparent that equipment failure was not an issue.

{¶ 5} Sergeant Holtz noticed that appellant's speech was slurred, her eyes were red and glossy and there was an odor of alcohol. He asked Ambrozy if she had anything to drink. She indicated that she had consumed four Michelob Ultra beers while at the VFW and that she was now on her way home which was not far away. He asked appellant to exit her vehicle and she complied. Ambrozy asked Sergeant Holtz again why she was pulled over and he responded again that it was the taillights.

{¶ 6} Ambrozy was then administered a series of field sobriety tests by Sergeant Holtz. Following the performance of these tests, appellant was placed under arrest for operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A), a misdemeanor of the first degree. She was then transported to the Port Clinton Police Department.

3.

{¶ 7} Upon arrival at the police station, the appellant underwent a 20-minute observation period prior to the performance of a Breath Alcohol Concentration (BAC) breathalyzer test.

{¶ 8} The sergeant made sure that she did not have any foreign objects in her mouth or ingested any material for 20 minutes prior to offering her the breath test.

{¶ 9} Appellant was then asked if she wanted to provide a breath sample. Ambrozy consented. Patrolman Daniel Miasek operated the machine and administered the test. On her first two attempts, the DataMaster Machine registered the attempts as producing an "invalid sample."

{¶ 10} Undisputed testimony from Patrolman Miasek, the officer that operated the DataMaster Machine establishes that, in this instance, the reason for the invalid sample was that appellant "would start and stop in providing a breath sample."

{¶ 11} After encouragement from Officer Miasek and Sargeant Holtz, Ambrozy attempted a third breath sample. That sample registered a BAC result of .137.

{¶ 12} This reading was in excess of the legal limit of alcohol concentration of .08. Ambrozy was then charged with one count of operating a motor vehicle with a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath, in violation of R.C. 4511.19(A)(1)(d).

{¶ 13} On November 29, 2022, the case was scheduled for jury trial. Prior to commencement of the jury trial, appellee made an oral motion in limine to the trial court.

4.

Appellee was requesting the exclusion of a December 14, 1998 memorandum issued from the Bureau of Alcohol and Drug Testing, Ohio Department of Health regarding suggested waiting periods between successively performed BAC tests upon an individual when an initial test fails to register results.

{¶ 14} That memorandum states:

> Effective immediately an 'invalid sample' indication on the BAC Verifier or BAC DataMaster is to be handled by initiating a new 20 minute observation period. The reason for this change is due to the fact that 'invalid sample' may be caused by different things. The operator will no longer have to decide exactly what may have caused the 'invalid sample,' the remedy will always be a new observation period.

{¶ 15} Appellee argued to the trial court that the memorandum should not be introduced to the jury because it was not part of the Ohio Administrative Code or the Ohio Revised Code. Appellant conceded to the trial court that the memorandum was neither a regulation nor a statute and had not been adopted by the Ohio Department of Health. The trial court granted the appellee's motion and denied the use of the memorandum in the course of the trial.

**Standard of Review**

{¶ 16} At the outset, we note that Ambrozy is not contesting the validity of the traffic stop or the manner of the administration of the field sobriety tests. Her appeal to

5.

this court takes exception to only the trial court's ruling on the appellee's motion in limine concerning the 1998 memorandum.

{¶ 17} A motion in limine is a request to limit or exclude evidence or witness testimony at trial.  Because appellant is challenging the trial court's ruling on a motion in limine, our standard of review is that which applies when a trial court excludes evidence. We review to determine whether there was an abuse of discretion on the part of the trial court.  *Thakur v. Health Care & Retirement Corp. of Am.*, 6th Dist. Lucas No. L-08-1377, 2009-Ohio-2765, ¶ 16.

{¶ 18} An abuse of discretion connotes that the trial court's judgment is unreasonable, arbitrary, or unconscionable.  *State v. Wyse*, 6th Dist., Lucas, No. L-22-1129, 2023-Ohio-3550, ¶ 29, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**Analysis**

{¶ 19} Remarkably, this 1998 memorandum and the precise arguments and issues surrounding its application is not a matter of first impression before this court.  Over two decades ago in a case with curiously similar facts, we held that we would not extend the power of the administrative agency of the Ohio Department of Health to affect the methods of conducting and analyzing tests beyond formally enacted regulations.  *State v. Gigliotti*, 6th Dist. No. E-99-081, 2000 WL 1867265, *3 (Dec. 22, 2000).

6.

**{¶ 20}** In *Gigliotti*, the state trooper observed the appellant for twenty minutes prior to testing to prevent oral intake of any material. When appellant first blew into the DataMaster Machine, he did not continue to blow. The device indicated an invalid sample. The trooper then testified that he told appellant that "blowing invalid samples will be marked as a refusal; I'm going to need him to take a deep breath and blow a steady stream of air into the machine. And he agreed he would do it the second time." The first invalid test was given at 3:27 a.m. and the second test that registered a BAC of .297 was given at 3:30 a.m. *Id*. at *3.

**{¶ 21}** The same 1998 memorandum was presented to the trial court in *Gigliotti*. That trial court noted that the memorandum from the Ohio Department of Health did not rise to the level of an administrative regulation. The trial court therefore ruled that "there is no valid basis upon which to exclude the breath test based upon the subject December 14, 1998 memorandum from the Department of Health." *Id*. at *4.

**{¶ 22}** In his appeal, Gigliotti presented two assignments of error. Each assignment claimed error by the trial court in failing to suppress the BAC results for failing to perform the tests in accordance with the "directive" issued by the Ohio Department of Health regarding the initiation of a second twenty-minute observation period after a BAC DataMaster breath machine registers an "invalid sample" result. *Id*. at *1.

7.

{¶ 23} In *Gigliotti*, the record contained the testimony of an official with the Ohio Department of Health who directed the issuance of the notable memorandum on December 14, 1998.

{¶ 24} The official testified that the memorandum was specifically not a regulation and was confined to a fact pattern where the operator did not know what caused an invalid sample. The official testified:

> The recommendation was, again, if mouth alcohol was thought to be the case or if the operator did not know what the case was, how to deal with the Defendant to observe, then waiting would eliminate the issue of mouth alcohol. *Id.* at *4.

{¶ 25} As we pointed out in *Gigliotti*, according to the official responsible for the issuance of the 1998 memorandum, an additional twenty-minute observation period should only be used if the operator was unsure of the cause of the invalid test or if the operator could determine from the display that the cause of the invalid test was mouth alcohol. *Id.* at *4.

{¶ 26} Further, we explicitly held in *Gigliotti* that our opinion would not incorporate and apply the 1998 memorandum:

> Arguably, the memorandum describes a method for conducting the breath test that has been approved by the Director of Health. However, we are troubled by any ruling that would extend the power of the administrative

agency of the Ohio Department of Health to affect the methods of conducting and analyzing tests beyond formally enacted regulations. Strict procedures must be followed before a regulation is promulgated, giving all interested parties a chance to comment. No such safeguards are in place for directives issued through memorandums. We therefore agree with the state of Ohio that a directive from a memorandum does not rise to the level of an administrative regulation, and is not enforceable. See, *State v. Gray,* 4 Ohio App.3d at 50 (administrative authority is creature of statute and cannot expand its own jurisdiction or authority). *Id*. at *6.

{¶ 27} Additionally, in further support of her general claims, appellant loosely cites to our opinion in *State v. Williams*, 6th Dist. Ottawa No. OT-03-020, 2004 -Ohio-2453.

{¶ 28} We will point out that in *Williams*, we relegated the December 14, 1998 memorandum to a footnote. In that footnote, we noted that the memorandum simply was little more than "illuminating" and remained without the force of a statute or regulation. *See Williams* at fn. 1.

{¶ 29} Further, *Williams* is clearly distinguishable in many respects from this appellant's case. *Williams* was a civil appeal of a denial of an Administrative License Suspension. The scope of an ALS appeal is limited to whether certain conditions, predicates to the suspension, have not been met.

9.

{¶ 30} The issue in *Williams* was limited to application of R.C. 4511.191(H)(1)(d)(i).  The specific issue in the ALS appeal and her subsequent appeal to this court was "whether the arrested person refused to submit to the chemical test requested by the officer."  *Id*. at ¶ 9.

{¶ 31} The sole and precise issue in *Williams* was confined to whether appellant refused the breathalyzer.  We noted that Williams had admitted into evidence before the trial court a note from her physician stating because appellant suffers from "extreme anxiety" resulting in shortness of breath she was unable to use the breathalyzer.  The evidence at the hearing also indicated that she was on several prescription medications to treat these conditions.  Additionally, she had three esophageal surgeries that impacted her breathing ability.  The testing officer testified that he had no reason to doubt Williams. *Id*. at ¶ 62.

{¶ 32} Based on the evidence that was presented to the trial court, we concluded that Williams had shown, by a preponderance of the evidence, that she did not refuse to take the breath alcohol test and that the trial court's contrary decision was not supported by competent, credible evidence. *Id*. at ¶ 63.

{¶ 33} Thus, the legal issues and fact pattern that was present in *Williams* is not analogous to the situation in Ambrozy's appeal that is now before this court.

{¶ 34} Appellant also advances the argument that the exclusion of this noteworthy 1998 memorandum prevents her from a meaningful opportunity to present a defense

10.

pursuant to *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed. 636 (1986). However, the Court also held:

> Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted. *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973).

{¶ 35} This is precisely what occurred in Ambrozy's case. The memorandum in question was excluded by the trial court because it was not relevant and could not be used by her as legal authority, even if she would have preferred to have the memorandum admitted into evidence to contradict the methods of conducting the breathalyzer tests pursuant to regulations established and promulgated in the Ohio Administrative Code.

{¶ 36} It is important to point out that appellant was not prevented from presenting evidence concerning the reliability of the DataMaster Machine or the breath tests administered to her. She was able to cross examine the operator. She was also able to cross-examine the "senior operator" of the machine who calibrated the precise breathalyzer unit, Port Clinton Officer Mark L. Anderson.

{¶ 37} Ambrozy was also not prevented from presenting evidence that would show she was somehow unable to blow into the breathalyzer on the first two attempts.

11.

{¶ 38} In this case, the trial court, in an evidentiary ruling, denied the use of a 1998 memorandum that was not relevant to her case and was never promulgated as part of the Ohio Administrative Code.

**Conclusion**

{¶ 39} Upon review, we find that the trial court's decision to grant appellee's motion in limine to prohibit the use of the December 14, 1998 memorandum from the Bureau of Alcohol and Drug Testing, Ohio Department of Health, was not unreasonable, unconscionable or arbitrary and hence, not an abuse of discretion.

{¶ 40} On consideration whereof, the judgment of the Ottawa County Municipal Court is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.         _____

                                        JUDGE

Christine E. Mayle, J.

                            _____

Myron C. Duhart, P.J.         JUDGE
CONCUR.

                            _____

                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.