DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant appeals his judgment of conviction for aggravated robbery and felonious assault entered on a jury verdict in the Lucas County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} It had only recently stopped snowing in East Toledo at 3:00 a.m. on December 5, 2005. Teresa Hamrick was delivering morning newspapers when she saw a *Page 2 
male Hispanic wearing a dark hooded sweatshirt walking on the sidewalk. Hamrick was driving an SUV, stopping at intervals to get out and toss papers onto subscriber's porches.
 {¶ 3} Sometime after she had first seen him, Hamrick saw the Hispanic male sitting on the steps of a church. At that point, Hamrick reported, she stopped her car, crossing in front of it to deliver two papers. When she walked back in front of the vehicle, she noted that the dome light was illuminated. She then looked into the car and saw the man she had seen earlier behind the wheel. She saw him put the car into drive and accelerate at her.
 {¶ 4} According to Hamrick, when the SUV came toward her, she grabbed onto an attachment to the front of the grill to avoid being run over. Although scraping her body on the street, she hung on as the driver executed a series of sharp turns, at one point losing control on the slick street and slamming into a curb. The impact with the curb caused Hamrick to lose her grip and fall. The driver then drove over Hamrick. The driver then careened down the street until hitting a parked car.
 {¶ 5} Police, responding to calls from neighbors, found Hamrick on the ground, her car abandoned with the driver's door open. After Hamrick was transported to the hospital, one of the police officers noticed tracks in the snow leading away from the abandoned vehicle. The officer followed the trail to a house about two blocks away.
 {¶ 6} When officers entered the house, they observed appellant, Rudy Joseph Lopez, running toward the rear of the structure. Appellant was shoeless, but police found a wet pair of boots and a wet jacket. When the officer who followed the trail to the house *Page 3 
compared the sole of the boots found in the house to the imprint left in the snow, he later testified, they appeared the same. Appellant was arrested along with two others in the house on outstanding warrants.
 {¶ 7} Meanwhile, a police detective, notified of appellant's arrest, created a photo array with pictures of appellant and five other Hispanic males. He took the array to the hospital, showing it to Hamrick. Hamrick identified the picture of appellant as, "* * * the son of a bitch that did this to me."
 {¶ 8} On December 14, 2005, a Lucas County Grand Jury named appellant in a three count indictment, charging aggravated robbery, a first-degree felony, felonious assault, a second-degree felony, and receiving stolen property. The matter proceeded to a trial before a jury which found appellant guilty of aggravated robbery and felonious assault.[1] The trial court entered judgment on the verdict and, following a presentence investigation, sentenced appellant to an eight-year term of incarceration for the aggravated robbery and a four-year term for the felonious assault, to be served consecutively.
 {¶ 9} From this judgment of conviction, appellant now brings this appeal, setting forth the following single assignment of error:
 {¶ 10} "The trial court erred in failing to afford the appellant proper relief pursuant to the provisions of Criminal Rule 16[.]" *Page 4 
 {¶ 11} During trial, the officer who had followed the trail to the house in which appellant was found testified:
 {¶ 12} "There was a pair of boots sitting right there. When he was placed into custody here, we told him we're taking him, he wanted his jacket and shoes because it was rather cold and he went immediately for these boots and put them on and just before he put them on, I told the officers to stop because I wanted to see the bottom of the shoes.
 {¶ 13} "Q Why did you want to see the bottom of the shoes?
 {¶ 14} "A To see if they matched the tread of the ones I was following. Just as I went to pick them up — they were wet and I had told our sergeant, you know, these boots are still wet and immediately defendant said, I'm not — them aren't mine. I'm not wearing them."
 {¶ 15} Appellant's counsel immediately objected to this testimony and moved for a mistrial. In a sidebar, counsel advised the court that the statement that the testifying officer had just attributed to appellant did not appear in any police report or other evidentiary material provided by the state pursuant to Crim.R. 16. The state agreed that there had been no such disclosure and, indeed, according to the prosecutor, he had not been advised of the testimony until his interview with the officer on the morning that the trial began.
 {¶ 16} The trial court analyzed the interaction as a possibleMiranda violation, but concluded that even though the statement attributed to appellant was post custodial and *Page 5 
prior to advisement of Miranda warnings, it was not in response to interrogation. The trial court overruled appellant's objection and denied his motion for a mistrial.
 {¶ 17} Crim.R. 16(B)(1)(a)(ii) expressly requires that, on a defense motion, the state must turn over to a defendant written summaries of any oral statement made by the defendant to any prosecuting attorney or law enforcement officer. State v. Gooden (1983), 16 Ohio App.3d 153, 158. The state cannot avoid its duty under the rule to provide such summaries merely by failing to make a record of the statement. State v.DeLeon (1991), 76 Ohio App.3d 68, 77, citing State v. Parson (1983),6 Ohio St.3d 442, 445.
 {¶ 18} The remedy a trial court elects to employ for a discovery violation as well as the decision to grant or deny a mistrial is within the sound discretion of the court and will not be reversed absent an abuse of that discretion. Crim.R. 16(E)(3); State v. DeLeon, supra, at 78; State v. Garner (1995), 74 Ohio St.3d 49, 59. Mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible. Id., citing State v. Franklin (1991),62 Ohio St.3d 118, 127.
 {¶ 19} With respect to discovery violations:
 {¶ 20} "Where, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made * * * to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused *Page 6 
was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted." State v. Parsons, supra, syllabus.
 {¶ 21} Appellee argues that the prosecutor's failure to disclose was not willful because the prosecutor was not informed of the officer's testimony until the day of the trial. Police are agents of the state and part of the prosecutorial machinery. State v. Tomblin (1981),3 Ohio App.3d 17, 18. Thus, the state was aware of such potential testimony from the outset of the case and had a clear obligation to disclose its existence to the defense. In such circumstances, it would be difficult to conclude that such an omission was not willful.
 {¶ 22} Neither is it difficult to conclude that knowledge of the statement at issue would have been useful to the defense. Springing the testimony from ambush at trial deprived appellant of an opportunity to employ a considered challenge to such testimony by way of a motion to suppress or in limine. More importantly, it also deprived the court of the opportunity to consider such a challenge in a deliberative manner away from the pressures present during a jury trial.
 {¶ 23} To this, appellee responds that appellant could have sought a continuance and his failure to do so constituted waiver. We reject this argument. Appellant moved for a mistrial. That is sufficient to put a range of remedies before the court.
 {¶ 24} Finally, there is the question of whether appellant was prejudiced by the introduction of such evidence. By this we mean: did the introduction of the evidence *Page 7 
alter the outcome of the trial? See Parsons at 445; State v. Cooper
(1977), 52 Ohio St.2d 163, 177. We conclude that it did not.
 {¶ 25} Police followed the tracks in the snow from Teresa Hamrick's SUV to appellant's house. When they entered at 3:30 a.m., of the three persons found there, only one was fully dressed: appellant. Only one attempted to flee: appellant. Teresa Hamrick positively identified appellant as the person who stole her car and ran over her, both from a photo array before she went into surgery and during trial. This is overwhelming evidence of appellant's guilt. Consequently, the verdict would not have been altered irrespective of whether testimony of appellant's prior statement was allowed or not.
 {¶ 26} We caution the appellee not to read this decision to mean that the state is free to disregard its discovery obligations when the evidence against a defendant is otherwise overwhelming.
 {¶ 27} Accordingly, appellant's sole assignment of error is not well-taken.
 {¶ 28} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense in preparation for the record, fees allowed by law, and the fee for filing this appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 8 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., concur.
[1] The receiving charge was dismissed on the prosecutor's motion prior to submission to the jury. *Page 1