JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Robert Mills, appeals his conviction from the Cuyahoga County Court of Common Pleas. Finding no error in the proceedings below, we affirm.
 {¶ 2} Mills, along with his co-defendant, Miguel Saucedo, was charged with two counts of aggravated robbery with firearm specifications and one count of kidnapping with firearm specifications. Both pled not guilty and elected to go to trial. Mills waived a jury trial and was tried to the bench; simultaneously, Saucedo was tried to the jury.
 {¶ 3} On April 16, 2007, Hector Gonzalez and his fiancee, Jessica Lillo, were robbed at gunpoint by two males while they were walking down West 49th Street and Storer Avenue in Cleveland, Ohio. The testimony revealed that the smaller male assailant, later identified as Mills, began to tussle with Gonzalez. The larger male assailant, later identified as Saucedo, grabbed Lillo by the arm and went through her purse. Lillo testified that Saucedo had a gun and pointed it at her while he went through her purse and dumped it on the ground. In the meantime, Mills punched and kicked Gonzalez several times in the head before taking his wallet and fleeing.
 {¶ 4} Gonzalez and Lillo walked to a convenient store and called the police. Officer Michael Tankersley from the Cleveland Police Department arrived within ten minutes, spoke with the victims, put them in his zone car, and began to tour the area looking for the suspects. One suspect was described as a heavyset male wearing a *Page 4 
large, overstuffed coat with a hood, orange lining, and fur trim. The other male was smaller, wearing a black leather or shiny coat.
 {¶ 5} While touring the area, Officer Tankersley spotted two individuals matching the description the victims gave. At the same time, Gonzalez shouted out, "That's them." Officer Tankersley detained the suspects and placed them on the ground until backup could arrive.
 {¶ 6} After backup arrived, a "cold stand" was conducted. Gonzalez testified that he identified Mills, who tussled with him. Lillo testified that she was too afraid to identify either suspect at that time. Officer Tankersley testified that both were unable to identify the suspects at that time. No weapons or items from the robbery were found on either suspect. Saucedo was arrested on an outstanding misdemeanor warrant, and Mills was released on the scene.
 {¶ 7} The following day, Lillo and Gonzalez gave a statement to Detective David Borden at the Cleveland Police Department Second District. Gonzalez picked both Mills and Saucedo out of a photo array. Lillo picked Saucedo out of a photo array.
 {¶ 8} Mills was found guilty of two counts of aggravated robbery with firearm specifications. Mills appeals, advancing three assignments of error for our review. His first assignment of error states the following:
 {¶ 9} "The trial court erred in denying Defendant's motion for mistrial because of the failure of the prosecutor to provide exculpatory evidence before trial, in *Page 5 
violation of Defendant's right to due process of law under the Fourteenth Amendment to the Constitution of the United States, and Article I, Section 10 of the Ohio Constitution."
 {¶ 10} Under this assignment of error, Mills argues that the prosecutor violated the discovery rules and Brady v. Maryland (1963),373 U.S. 83, when he failed to disclose a text message that was sent to Gonzalez an hour and a half after the robbery. The text message, which Gonzalez testified about at trial, stated: "How does it feel O [sic] be in your own space. [signed] Getting Money." Gonzalez thought it was from the robbers who had obtained paperwork from his wallet regarding Gonzalez's new apartment. Mills argues that the information was exculpatory and that the trial court should have declared a mistrial for the discovery violation. Mills also argues that it affected his decision to waive his right to a jury trial.
 {¶ 11} Because the alleged exculpatory evidence was presented during the trial, there exists no Brady violation requiring a new trial.State v. Hanna, 95 Ohio St.3d 285, 298, 2002-Ohio-2221; see, also,State v. Wickline (1990), 50 Ohio St.3d 114, 116-117; United States v.Agurs (1976), 427 U.S. 97, 103. Nevertheless, Crim. R. 16(E)(3) provides the following: "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other *Page 6 
order as it deems just under the circumstances." Mills argues that the court should have declared a mistrial.
 {¶ 12} A mistrial should be declared only when the ends of justice require it and a fair trial is no longer possible. State v. Adams, Cuyahoga App. No. 89919, 2008-Ohio-3136. We review the denial of a motion for mistrial under an abuse of discretion standard. Id.
 {¶ 13} In this case, the trial court discussed the withheld information with defense counsel and the prosecution at side-bar. The court allowed the defense to decide whether either defendant wanted the information to come in at trial. The trial court also allowed the defense to recall any of the state's witnesses regarding the text message if they so desired. The court noted for the record that it did not see how the text message related to the robbery and asked the detective if he followed up with the text message. The detective indicated that he could not determine who sent the text message because it was a prepaid phone that was not registered to anyone in particular. The court was satisfied that the defense would have concluded the same if they had been given the information prior to trial.
 {¶ 14} We find that the trial court did not abuse its discretion when it denied Mills' motion for a mistrial. Furthermore, we find no merit to Mills' argument that he would not have waived a jury had he been given the information. See State v. Wickline, supra, at 116-117 (rejecting the exact same argument as not being *Page 7 
premised upon his right to a jury trial). Accordingly, Mills' first assignment of error is overruled.
 {¶ 15} Mills' second assignment of error states the following:
 {¶ 16} "The trial court erred in permitting the police officer to give opinion testimony regarding the alleged victims."
 {¶ 17} Under this assignment of error, Mills complains that the officer improperly vouched for the credibility of the victims when he testified that he left the incident "with a very favorable idea about these two. They were very nice people. They were true victims."
 {¶ 18} Judging the credibility of the witness is exclusively for the trier of fact. State v. Boston (1989), 46 Ohio St.3d 108. Therefore, it is improper for a witness to vouch for the credibility of a victim's account of an incident. Id.; see, also, State v. Hart, Cuyahoga App. No. 79564, 2002-Ohio-1084. A police officer's testimony cannot violateBoston, because jurors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their previous experiences with other cases.State v. Miller (Jan. 26, 2001), Montgomery App. No. 18102.
 {¶ 19} In this case, the officer's testimony was in violation ofBoston because he offered an opinion as to the veracity of the victims. The admission of the officer's testimony was improper. Nevertheless, we must determine whether such error was harmless. *Page 8 
 {¶ 20} Pursuant to Crim. R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order to find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt.State v. Lytle (1976), 48 Ohio St.2d 391, 403. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. State v. Williams (1983),6 Ohio St.3d 281, 290. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown,65 Ohio St.3d 483, 485, 1992-Ohio-61.
 {¶ 21} Although the officer improperly vouched for the veracity of the victims, we cannot say that his testimony contributed to Mills' conviction. The officer's assertion primarily related to his belief that the victims were, indeed, "real" victims. This point was conceded by Mills at oral argument. Nevertheless, the officer's comments, while not directly related to the identification issue, were still related to the veracity of the victims and were inadmissible.
 {¶ 22} Still the independent evidence established that Mills matched the victims' description, and he was found within a block of the crime scene with Saucedo, who also matched the victims' description. Further, Gonzalez picked Mills out of a photo array and identified him at trial. We find that there was overwhelming proof of Mills' guilt aside from the officer's improper testimony. Furthermore, the erroneous admission of statements in violation of Boston is more likely to be *Page 9 
harmless if the case involved a bench trial instead of a jury trial. SeeState v. Coffman (1998), 130 Ohio App. 467, 476. Accordingly, Mills' second assignment of error is overruled.
 {¶ 23} Mills' third assignment of error states the following:
 {¶ 24} "The Defendant's conviction is against the manifest weight of the evidence, in violation of Defendant's right to due process of law under the Fourteenth Amendment to the Constitution of the United States, and Article I, Section 10 of the Ohio Constitution."
 {¶ 25} Mills argues that his conviction is against the manifest weight of the evidence because the eyewitness testimony was unreliable and the identification was suspect. Mills points out that neither Lillo or Gonzalez could positively identify the robbers at the "cold stand." Mills argues that the cold stand tainted Gonzalez's subsequent identifications. Mills contends that during trial and at the photo array Gonzalez actually identified the males from the cold stand and not the two males who robbed him.
 {¶ 26} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a *Page 10 
manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.) State v.Leonard, 104 Ohio St.3d 54, 68, 2004-Ohio-6235.
 {¶ 27} At trial, Officer Tankersley testified that the victims gave him a description of the suspects: specifically, that the "bigger" suspect was wearing a black or grayish coat with orange lining and fur trim, while the "smaller" suspect wore a dark leather or shiny coat. While touring the area for the suspects, Officer Tankersley spotted two individuals matching the victims' description. At the same time, Gonzalez shouted out, "That's them." Officer Tankersley detained the individuals and conducted a "cold stand." Although the suspects matched the victims' description, the victims did not positively identify them for the officer. Gonzalez testified that he identified Mills at the cold stand as being the one with whom he struggled. Lillo testified that she was too afraid to identify them at the cold stand. The suspects were observed soon after the incident, within a block of where the robbery occurred, wearing the clothes described by the victims.
 {¶ 28} Gonzalez identified Mills in a photo array and stated that he was 100 percent sure that Mills was his attacker. Gonzalez identified Saucedo in a photo array and stated that he was 90 percent sure that Saucedo was the one who robbed Lillo. Gonzalez identified both at trial. Lillo identified Saucedo in a photo array and at trial. *Page 11 
 {¶ 29} Mills makes a compelling argument about the potential for misidentification in situations, like here, where the positive identification occurs not at the time of the "cold stand," but rather during a subsequent photo array. The inherent danger in this process is the risk that the witness is identifying the person(s) from the cold stand and not from the original incident. However, in this instance, Lillo explained her reluctance to identify Saucedo at the time of the cold stand as she claimed she was afraid. Her explanation was evaluated by the trier of fact. She asserted at trial that she was robbed by Saucedo. She never actually identified Mills and, in fact, his conviction rests on the testimony of Gonzalez. Arguably, Gonzalez offered an inconsistent statement by initially saying "that's them" and then not positively identifying either Mills or Saucedo during the cold stand. Again, his credibility was evaluated by the trier of fact in relation to his later positive identification of both suspects during the photo array and at trial. Given the accuracy of the clothing description, the explanation of initial fear, the proximity of both suspects to the crime scene, and the subsequent identifications of both suspects during the photo array and trial, we cannot say the trier of fact lost its way.
 {¶ 30} We find that there was substantial evidence upon which the trier of fact could conclude that Mills committed the crime of aggravated robbery. Mills' convictions are not against the manifest weight of the evidence. Accordingly, Mills' third assignment of error is overruled.
 Judgment affirmed. *Page 12 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and CHRISTINE T. MCMONAGLE, J., CONCUR. *Page 1