[Cite as *State v. Howard*, 2025-Ohio-3281.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114623 |
| v. | : | |
| LEDON HOWARD III, | : | |
| Defendant-Appellant. | : | |

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 11, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-684222-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Timothy Troup and Carley Berman, Assistant Prosecuting Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Britta Barthol, Assistant Public Defender, *for appellant*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant Ledon Howard III ("Howard") appeals his convictions and sentence. He claims the following errors:

1. The trial court erred by admitting evidence which was disclosed for the first time during the trial and deprived Ledon Howard of his constitutional rights to due process and a fair trial and violated Crim R. 16.

2. The evidence produced at trial was insufficient to support a finding of guilt as to counts three, four, five, seven and eight of the indictment in violation of Ledon Howard's right to due process guaranteed by the 14th Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

3. Ledon Howard's convictions are not supported by the weight of the evidence presented and, thereby, violate his right to due process as guaranteed by the 14th Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

4. The trial court's sentence is contrary to law because it considered Ledon's silence as a lack of remorse.

5. The trial court's consecutive sentencing of Ledon Howard was in error because the sentencing findings were clearly and convincingly not supported by the record.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Howard was charged in a 15-count indictment with one count of aggravated murder, two counts of murder, four counts of felonious assault, one count of attempted murder, and two counts of discharge of firearms on or near prohibited premises in connection with a shooting incident that occurred near East 112th Street and Benham Avenue in Cleveland, Ohio on July 9, 2023. Howard was also charged with one count of attempted murder, one count of felonious assault, and two counts of discharging a firearm on or near prohibited premises in connection with another shooting incident that occurred at Reese Park in Bay Village, Ohio on July 16, 2023. Lastly, Howard was charged with one count of

discharging a firearm on or near a prohibited premises in connection with a third shooting incident that occurred at the Zelma George Recreation Center in Cleveland, Ohio on July 19, 2023.

{¶ 4} Howard was arrested following the shooting on July 19, 2023, and remained in jail until trial, which occurred in June 2024. Officer Karli Ayers ("Ayers") and her partner, Dana Lyberger ("Lyberger"), responded to a complaint for noise occurring near East 112th Street and Benham Avenue in the early morning hours of July 9, 2023. Ayers testified there was a large group of approximately 50 people having a party at the time they arrived and that she and Lyberger left the scene after asking the partygoers to quiet down.

{¶ 5} Ayers and Lyberger returned to the scene about an hour later after ShotSpotter, a system that detects gunfire, reported numerous gunshots in the area near East 112th Street and Benham Avenue at approximately 3:00 a.m. (Tr. 604.) Ayers testified that when they arrived on the scene, they found two gunshot victims, D.S. ("decedent"), who died at the scene, and R.A., who sustained a nonfatal gunshot wound to the leg.

{¶ 6} Witnesses at the scene were unable or unwilling to provide information to police regarding who fired the gunshots. However, Vesna Piscitello ("Piscitello"), a civilian employee in the Real Time Crime Center of the Cleveland Police Department, testified that multiple cameras throughout the City of Cleveland captured surveillance video of six individuals dressed in pants and hoodies covering

their faces walking toward the crime scene. Their clothing was striking because it was a summer night and their faces were covered.

{¶ 7} Piscitello testified that her investigation involved "about 30" videos from throughout the city. (Tr. 777.) The videos revealed that the six suspects arrived on the scene in three different vehicles, including a dark Dodge Charger, a white Kia Forte, and a dark-colored BMW SUV. Piscitello explained that the city also uses the Flock license plate reader, which scans and photographs license plates on vehicles as they pass through intersections. Using images from the Flock license plate reader, Piscitello discovered that the Dodge Charger and BMW SUV were registered to Kendall Goodman ("Goodman"), and the Kia Forte was registered to Howard.

{¶ 8} R.A. testified that he and decedent arrived at the party near East 112th Street and Benham shortly before the shooting. As decedent was talking to a few women, a vehicle approached the area, parked nearby, and "a bunch of guys hop[ped] out" and were hiding behind a house and some bushes. (Tr. 899.) R.A. stated that the guys were "dressed up" in "masks and clothes." R.A. was frightened by the masked individuals and attempted to run but was shot "immediately." Decedent was also shot as "over 50" gunshots were fired. (Tr. 901.) According to R.A., neither he nor decedent threatened the shooters, and further investigation confirmed that neither R.A. nor decedent were armed when they were shot. According to Piscitello, the real-time crime cameras captured the shooters fleeing in their vehicles immediately after the shooting. (State's exhibit Nos. 33-35; tr. 794-796.)

{¶ 9} Police recovered numerous cartridge cases from the crime scene. Examination of the cartridge cases revealed that six firearms were used in the shooting; a "9 millimeter Glock, . . . , a second unknown 9 millimeter caliber firearm, two unknown 10 mm caliber firearms, one .45-caliber firearm, and one unknown 223/5.56 by .45 millimeter caliber firearm." (Tr. 869.)

{¶ 10} C.B. testified that he was playing basketball at Reese Park in Bay Village on July 16, 2023, when he found himself in a scuffle with an unknown player. Thirty seconds later, C.B. heard a gunshot and felt a bullet pass by his body. (Tr. 972.) C.B. was stunned and fell to the ground, but he managed to observe the shooter whom he later identified in a photo array presented to him by Bay Village police. (Tr. 976-979.) He later learned that the person he selected in the array was Howard. (Tr. 976-979.) And, a single 9 mm-shell casing was recovered from Reese Park after the shooting. (Tr. 1027 and 1048.)

{¶ 11} Joseph Russo ("Russo"), a Cleveland police officer, was present at the Zelma George Recreation Center in Cleveland on July 19, 2023, when he heard a gunshot fired. He and his partner responded to the location of the gunshot and encountered Howard, who was in possession of a Glock 19x, a 9 mm-caliber firearm. (Tr. 1136-1137.) Russo seized the firearm and placed Howard under arrest for discharging a firearm at or near a prohibited premises. (State's exhibit No. 6; tr. 1137.) Russo testified that a single shell casing was recovered from the scene. (Tr. 1145.)

{¶ 12} Sara Dranuski ("Dranuski"), a firearms examiner with the Cuyahoga County Medical Examiner's Office, examined the shell casings taken from all three shooting incidents and determined that the 9 mm firearm confiscated from Howard on July 19, 2023, matched the shell casings recovered from the other two incidents. (State's exhibit No. 183; tr. 867.)  Howard admitted that he fired his 9 mm weapon at all three locations during his interview with homicide detective Erin O'Donnell ("O'Donnell").  (Tr. 1104 and 1244.)

{¶ 13} The bullet recovered from decedent's body was a 10 mm-caliber bullet. (Tr. 867.)  Therefore, the defense intended to show that Howard did not cause decedent's death since there was no evidence that Howard possessed a 10 mm firearm during the shooting on July 9, 2023.  However, on the fifth day of trial, the State notified the court and defense counsel that it intended to present newly discovered evidence that Howard purchased a 10 mm-caliber firearm shortly before the July 9, 2023 shooting.  The State obtained the evidence the day before, pursuant to a subpoena it served on a local gun shop.

{¶ 14} Defense counsel objected to the evidence on grounds that it was not provided in discovery and that the new evidence surprised and prejudiced the defense.  The court allowed the parties to brief the issue and, after hearing their respective arguments, the court allowed a Cleveland detective to testify about the new evidence.  The purchase records revealed that Howard purchased a Glock 19 - pistol, 9 mm on December 14, 2022, a Micro Draco pistol on December 30, 2022,

and Glock Gen 5, 10 mm on June 20, 2023. (Tr. 941-942 and 1184-1187; State's exhibit Nos. 430-432.)

{¶ 15} At the conclusion of the State's case, defense counsel moved for acquittal pursuant to Crim.R. 29. The court granted the motion as to Count 13, which alleged that Howard illegally discharged a firearm on or near a prohibited premises over a road or highway on July 16, 2023. The motion was denied as to all other counts.

{¶ 16} The jury found Howard not guilty of aggravated murder, murder, attempted murder of R.A., attempted murder of Brown, and two counts of discharging a firearm on or near a prohibited premises as alleged in Counts 1, 2, 6, 9, 10, and 11. However, it found him guilty of felony murder, four counts of felonious assault, and two counts of discharging a firearm on or near a prohibited premises as alleged in Counts 3, 4, 5, 7, 8, 9, 12, and 14.

{¶ 17} The two counts of felonious assault alleged in Counts 4 and 5 merged with the felony-murder charge alleged in Count 3, and the State elected to have Howard sentenced on Count 3. The court sentenced Howard on Count 3 to 15 years to life in prison plus an additional three years for an attendant firearm specification for an aggregate prison term of 18 years to life.

{¶ 18} The felonious-assault charge in Count 7 merged with the felonious-assault charge alleged in Count 8, and the State elected to have Howard sentenced on Count 7. The court sentenced Howard to six years on Count 7, plus three years for an attendant firearm specification for an aggregate prison term of ten years.

{¶ 19} On Count 12, which alleged felonious assault with a deadly weapon on C.B., the court sentenced Howard to five years, plus three years on the attendant three-year firearm specification. Finally, on Counts 13 and 14, which were renumbered, the court imposed 30-day sentences to be served concurrently with the felony counts. The court ordered the sentences imposed on Counts 3, 7, and 12 to be served consecutively with each other but concurrently with the remaining counts for an aggregate sentence of 32 years to life in prison. Howard now appeals his convictions and sentence.

## II. Law and Analysis

### A. Discovery Violation

{¶ 20} In the first assignment of error, Howard argues the trial court erred by admitting evidence that Howard purchased three firearms from a gun store because the purchase records were disclosed to the defense for the first time during trial. He contends the untimely disclosure of newly discovered evidence constituted a discovery violation under Crim.R. 16 and that the admission of the evidence deprived him of his constitutional right to a fair trial.

{¶ 21} A trial court has broad discretion regarding the admission of evidence, and a "reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion." *State v. Noling*, 2002-Ohio-7044, ¶ 43, citing *State v. Issa*, 93 Ohio St.3d 49 (2001). An abuse of discretion occurs when the trial court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 22} "It is axiomatic, however, that a trial 'court does not have discretion to misapply the law.'" *Morgan v. Greater Cleveland Regional Transit Auth.*, 2025-Ohio-1655, ¶ 64, citing *Johnson* at ¶ 38. Thus, an abuse of discretion also occurs when a court ""applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact."" *Id.*, quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.), quoting *Berger v. Mayfield*, 265 F.3d 399 (6th Cir. 2001).

{¶ 23} Crim.R. 16 governs discovery and requires the prosecuting attorney to provide copies or photographs of certain items material to the defense or are intended for use by the prosecuting attorney as evidence at the trial. Crim.R. 16(B). The purpose of the rule is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). The rule is intended to "'prevent surprise and the secreting of evidence favorable to one party.'" *State v. Darmond*, 2013-Ohio-966, ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987).

{¶ 24} A mistrial is not required every time a discovery violation occurs. *State v. Johnson*, 2020-Ohio-2940, ¶ 27 (8th Dist.). When imposing a sanction for a discovery violation "the trial court must conduct an inquiry into the surrounding circumstances and impose 'the least severe sanction that is consistent with the

purpose of the rules of discovery.'" *State v. Rucker*, 2018-Ohio-1832, ¶ 20 (8th Dist.), quoting *Papadelis* at paragraph two of the syllabus.

{¶ 25} In choosing the appropriate sanction for a discovery violation, a trial court must consider (1) whether the prosecution's failure to disclose was willful, (2) whether the disclosure of the information prior to trial would have aided the accused's defense, and (3) whether the accused suffered prejudice. *State v. Lindsey*, 2019-Ohio-782, ¶ 48 (8th Dist.), citing *State v. Jackson*, 2005-Ohio-5981, citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983).

{¶ 26} "In considering whether a defendant was prejudiced, courts often consider the balance of the evidence, notwithstanding the claimed discovery violation." *State v. Wainwright*, 2023-Ohio-2292, ¶ 51 (8th Dist.), citing *State v. Lopez*, 2007-Ohio-5473, ¶ 24 (6th Dist.). "A reviewing court may overlook an error where the admissible evidence comprises 'overwhelming' proof of a defendant's guilt." *Id.*, citing *State v. Mills*, 2008-Ohio-3666, ¶ 20 (8th Dist.), citing *State v. Williams*, 6 Ohio St.3d 281, 290 (1983). In other words, evidence, erroneously admitted in violation of Crim.R. 16, does not warrant reversal unless "the jury was substantially swayed by the erroneously admitted evidence in a way that affected the outcome" of the trial. *State v. Boaston*, 2020-Ohio-1061, ¶ 80.

{¶ 27} The State subpoenaed the gun store on the fourth day of trial, after R.A. testified and described the guns used in the shooting. The State admitted that it could have subpoenaed the store sooner but it did not think of it until R.A. testified at trial. Therefore, the State's failure to subpoena the purchase records and turn

them over to defense counsel in discovery constituted a negligent omission rather than a willful misdeed.

{¶ 28} Defense counsel nevertheless argued that had she known that evidence of Howard's gun purchases was going to be admitted into evidence, she would have pursued a different trial strategy and a different approach to the cross-examination of R.A. Counsel explained that her defense strategy focused on the fact that decedent was killed by a 10 mm-caliber bullet, and the available evidence showed that Howard possessed and used a 9 mm-caliber firearm during all three shooting incidents. She intended to show that Howard did not murder decedent because he did not possess a 10 mm firearm. However, the untimely disclosure of evidence during the trial establishing that Howard purchased a 10 mm firearm shortly before the shooting implicated him in the murder.

{¶ 29} Foreknowledge of the firearm-purchase records would have helped defense counsel to anticipate how the trial would unfold and to tailor a defense accordingly. However, defense counsel asserted she was going to present a self-defense theory, but there was no evidence to support it even before the firearm-purchase records were introduced. Therefore, the delayed disclosure of the firearm-purchase records did not have any impact on the self-defense theory.

{¶ 30} Moreover, there is nothing to suggest that had the records been excluded, the outcome of the trial would have been different. Howard admitted that he shot his 9 mm Glock 19x at the party on East 112th Street and Benham Avenue on July 9, 2023, on the basketball court at Reese Park in Bay Village on July 16,

2023, and at the Zelma George Recreation Center in Cleveland on July 19, 2023. There was no evidence that Howard ever used a 10 mm-caliber weapon, and the murder weapon was never recovered. Therefore, there was no evidence that the 10 mm bullet recovered from decedent's body came from the 10 mm Glock Howard purchased.

{¶ 31} The totality of the evidence, including the firearm-purchase records, failed to identify the person who actually shot and killed decedent. Despite the admission of the firearm-purchase records, the jury acquitted Howard of aggravated murder and murder, which would have required proof that Howard, himself, knowingly caused decedent's death. *See* R.C. 2903.01(A) and 2903.02(A). The jury instead found Howard guilty of felony murder, in violation of R.C. 2903.02(B), which states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree . . . ."

{¶ 32} Regarding the "offense of violence" referenced in the felony-murder statute, Howard was found guilty of two counts of felonious assault relative to decedent, in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), that required proof, beyond a reasonable doubt, that Howard "did knowingly cause serious physical harm to [decedent]" and that he "had a firearm on or about his person or under his control while committing the offense." In the context of felony murder, it does not matter that Howard did not in fact cause serious physical harm to decedent.

{¶ 33} In *State v. Dixon*, 2002 Ohio App. LEXIS 472, *14 (2d Dist. Feb. 8, 2002), the court observed that there exist two theories for the crime of felony murder, the "proximate cause theory" and the "agency theory." *Id.*, citing *Moore v. Wyrick*, 766 F.2d 1253 (8th Cir. 1985); *State v. Chambers*, 53 Ohio App.2d 266 (9th Dist. 1977).

{¶ 34} Under the "proximate cause theory" of felony murder

> "it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. Defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the 'proximate result' of [the d]efendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience."

*State v. Wood*, 2025-Ohio-1182, ¶ 103 (8th Dist.), quoting *Dixon* at *14.

{¶ 35} Ohio courts have held that given "the proximate causation language used in R.C. 2903.02(B), and that the statute does not provide that the defendant or an accomplice must be the immediate cause of death, it is clear that Ohio has adopted the proximate cause theory." *State v. Ford*, 2008-Ohio-4373, ¶ 33 (10th Dist.), citing *Dixon* generally. "Therefore, under Ohio's felony-murder statute, it is irrelevant whether the killer is the defendant, an accomplice, or a third party." *Id.*, citing *State v. Franklin*, 2008-Ohio-2264, ¶ 111 (7th Dist.).

{¶ 36} In addition, the jury found Howard guilty under a complicity theory of criminal liability. R.C. 2923.03 governs complicity, and states that "[n]o person,

acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense[.]"  R.C. 2923.03(A).  R.C. 2923.03(F) further provides that "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender."

> "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal."  [*State v.*] *Johnson*[, 93 Ohio St.3d 240, 243 (2001)] at syllabus.  "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'"  *Id*. at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist. 1971).

*State v. McFarland*, 2020-Ohio-3343, ¶ 26.

{¶ 37} Howard arrived at the party on East 112th Street and Benham Avenue with a group of friends, all of whom discharged firearms at the scene.  Decedent was struck and killed as a result of the group's collective action, and the jury properly found Howard guilty of felony murder under the proximate cause theory.  Furthermore, the group's collective action demonstrated a shared intent to use deadly weapons to cause, or attempt to cause, serious physical harm to the victims.  Therefore, even if the evidence of Howard's purchase of a 10 mm-caliber weapon had been excluded, the jury would have heard evidence that decedent was killed and R.A. was seriously injured as a result of a coordinated attack in which Howard was complicit.

{¶ 38} The jury found Howard guilty of acts committed by his friends. Evidence of Howard's gun purchases added little to no additional probative value to the analysis, especially since the 10 mm-caliber murder weapon was never recovered, nobody knows who possessed it, and there was no proof that it belonged to Howard. Therefore, prior knowledge of the evidence would not have helped the defense in any meaningful way, and Howard was not prejudiced by the admission of the firearms-purchase records.

{¶ 39} The first assignment of error is overruled.

## B. Sufficiency

{¶ 40} In the second assignment of error, Howard argues there was insufficient evidence presented at trial to support his felony-murder and felonious-assault convictions alleged in Counts 3, 4, 5, 7 and 8. The felony-murder and felonious-assault charges alleged in Counts 3, 4, and 5 pertained to decedent, and the felonious-assault charges alleged in Counts 7 and 8 pertained to R.A.

{¶ 41} The test for sufficiency requires a determination as to whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 42} Howard argues there is insufficient circumstantial evidence to support his convictions in Counts 3, 4, 5, 7, and 8 because the guilty findings

required the jury to stack inferences, and Ohio law generally prohibits the stacking of inference to prove a claim.

{¶ 43} Proof of guilt may be supported "by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Rodano*, 2017-Ohio-1034, ¶ 35 (8th Dist.). Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *State v. Ransom*, 2024-Ohio-2634, ¶ 52 (8th Dist.), citing *State v. Rodano*, 2017-Ohio-1034, ¶ 35 and *State v. Cassano*, 2012-Ohio-4047, ¶ 13 (8th Dist.).

{¶ 44} However, "a trier of fact may not draw an inference solely and entirely upon another inference, where that inference is unsupported by any additional facts or inferences drawn from other facts." *State v. McClain*, 2025-Ohio-962, ¶ 38 (8th Dist.), citing *State v. Brown*, 2018-Ohio-3674, ¶ 19 (8th Dist. ) ("Ohio law precludes the stacking of inferences to prove a claim."). "'When an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or inferences drawn from other established facts, the conviction is improper.'" *State v. Taylor*, 2022-Ohio-614, ¶ 26 (8th Dist.), quoting *State v. Armstrong*, 2014-Ohio-4304, ¶ 23 (11th Dist.).

{¶ 45} Howard was found guilty of one count of felony murder, in violation of R.C. 2903.02(B), which states, in relevant part, that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to

commit an offense of violence that is a felony of the first or second degree[.]" The predicate offense of violence was felonious assault, in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), which states that "[n]o person shall knowingly . . . (1) Cause serious physical harm to another . . . ; [or] (2) Cause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."

{¶ 46} There was no direct evidence that Howard killed decedent or that he caused R.A.'s gunshot injury. However, the State set forth a complicity theory of criminal liability by presenting evidence demonstrating that Howard was guilty of the alleged offenses as an aider and abettor. As previously stated, to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), "'the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *McFarland*, 2020-Ohio-3343, ¶ 26, quoting *Johnson,* 93 Ohio St.3d 240, at syllabus.

{¶ 47} The State presented both direct and circumstantial evidence of Howard's participation in the July 9, 2023 shooting. Cleveland's real-time crime cameras captured videos of Howard's vehicle driving to an area near the crime scene with two other vehicles occupied by Howard's friends. The videos also showed Howard walking with five friends from their parked cars to the area of East 112th Street and Benham Avenue shortly before the shooting. R.A. testified that he saw the group hiding behind a nearby house and in the bushes minutes before they opened fire. (Tr. 899-900.) R.A. estimated that the shooters fired over 50 gunshots.

(Tr. 901.) The shooting was reported at 3:05 and 3:06 a.m., and Howard and his friends' vehicles were observed on real-time crime cameras erratically driving away from the neighborhood at 3:06 a.m. (Tr. 792-793.) The police officers, who responded to the scene after the shooting, found numerous 9 mm and 10 mm shell casings, which further established that Howard and his friends fired a large number of gunshots.

{¶ 48} Howard identified himself in a video in which he is seen walking with five friends toward the party shortly before the shooting. He also admitted to Detective O'Donnell that he fired his weapon "10 or more" times at the scene of the party where decedent was killed and R.A. was shot in the leg. (Tr. 1245.) The individuals depicted in the real-time crime videos were wearing masks and hoodies even though it was July 9, 2023. The partygoers, who were visible in the responding officers' body-camera videos, were wearing shorts and short-sleeved shirts, which suggests it was a warm summer night.

{¶ 49} The jury could reasonably conclude that the fact that Howard and his friends were dressed in hoodies covering their heads on a warm summer night was incriminating, since they were obviously concealing their identities as they crept up and fired numerous gunshots at the partygoers. Based on this direct evidence, the jury could reasonably infer that Howard and his friends shared a criminal intent to shoot at the party because they arrived together, they all concealed their identities, and they simultaneously opened fire on the partygoers. There was no need to stack inferences in order to reach this conclusion. There was, therefore, sufficient

evidence to support Howard's felony-murder and felonious-assault convictions as alleged in Counts 3, 4, 5, 7, and 8.

{¶ 50} The second assignment of error is overruled.

### C. Manifest Weight of the Evidence

{¶ 51} In the third assignment of error, Howard argues his convictions are against the manifest weight of the evidence. He contends there is a lack of credible evidence that he was complicit in the shooting incident that occurred on July 9, 2023.

{¶ 52} In contrast to sufficiency, "weight of the evidence concerns the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1987). While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, . . . weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the [S]tate's or the defendant's?" *Id.*

{¶ 53} In a manifest-weight-of-the-evidence challenge, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983).

{¶ 54} Howard admitted that he drove his white Kia Forte to the area of East 112th Street and Benham Avenue on the night of the shooting. He also identified himself walking to the scene of the shooting on real-time crime videos, and he admitted that he fired his 9 mm-caliber weapon at the crime scene "10 or more" times. (Tr. 1245.) He nevertheless argues there is no credible evidence that he was complicit in the shooting death of decedent and the felonious assault of R.A. However, as previously stated, the real-time crime videos showed Howard acting in concert with his five friends, who also participated in the shooting on July 9, 2023. He drove with them to the neighborhood, he walked with them from their cars to the party, and he fled the scene with his friends immediately after the shooting.

{¶ 55} Howard and his friends also attempted to conceal their identities by covering their heads with hoodies and masks as they walked to the party. This behavior is suspicious in light of the shooting that transpired upon their arrival at the party. Moreover, the real-time crime videos showed Howard and his friends driving erratically immediately after the shooting. Their collective action shows a shared intent to cause serious physical harm and death to one or more of the individuals at the party on East 112th Street and Benham Avenue. Therefore, the State's complicity theory of criminal liability was supported by credible evidence.

{¶ 56} The third assignment of error is overruled.

## D. Lack of Remorse

{¶ 57} In the fourth assignment of error, Howard argues his sentence is contrary to law because the trial court considered his silence as a lack of remorse in violation of the Fifth Amendment to the United States Constitution.

{¶ 58} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 21. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and convincingly" finds that (1) the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(A)(1) or (2) the sentence is "otherwise contrary to law."

{¶ 59} Howard argues the trial court impermissibly considered his silence as a lack of remorse when considering the statutorily required sentencing factors. In *State v. Brunson*, 2022-Ohio-4299, the Ohio Supreme Court recognized that the Fifth Amendment, which guarantees the right against self-incrimination, prohibits drawing any negative inferences from a defendant's silence at sentencing when those inferences involve factual determinations in the case. *Id.* at ¶ 78. The Court explained: "A defendant's right to remain silent extends past trial and through sentencing . . . because liability for the crime with which the defendant is charged continues until the sentence has been imposed[.]" *Id.* at ¶ 75, citing *Estelle v. Smith*, 451 U.S. 454, 468 (1981) and *Mitchell v. United States*, 526 U.S. 314, 328-330 (1999).

{¶ 60} At the sentencing hearing, the prosecutor argued that Howard's refusal to identify his accomplices and to tell police where they could find two of his guns, which were never recovered, reflected a lack of remorse. (Tr. 1704.) Defense counsel objected, and the court explained that it was not penalizing Howard for invoking his Fifth Amendment right, but that the court was troubled by Howard's lack of cooperation in locating the missing guns and accomplices. (Tr. 1705.)

{¶ 61} Howard maintained his innocence throughout the proceedings. (Tr. 1713 and 1718.) In *Brunson*, the court explained an important distinction between sympathy and remorse in cases where a defendant maintains his innocence. The Court explained:

> If a defendant is remorseful at sentencing, that necessarily means that the defendant has sadness, guilt, or regret for his or her involvement in the offense. While a defendant may have been found guilty of an offense by the jury, this does not mean that the defendant committed the offense. And it must be stated again that remorse is not the same as sympathy — a person with remorse expresses it by acknowledging his or her wrongdoing.

*Id*. at ¶ 80. Regarding remorse, the court continued:

> Because "remorse" is a loaded term and showing remorse requires a person to acknowledge that he or she committed an offense, a finding of a lack of remorse necessarily goes "to *factual determinations* respecting the circumstances and details of the crime" (emphasis sic), *Mitchell*, 526 U.S. at 328, . . . because it implicates the defendant's role in the crime. For a criminal defendant who pleaded not guilty and took the case to trial, thus maintaining his or her innocence, a finding of a lack of remorse based on the defendant's silence is to use that silence to infer the defendant's involvement in the crime. If the trial court is permitted to use the defendant's silence to infer his or her involvement in the crime, the defendant "might reasonably feel compelled to trade the certainty of incrimination by silence for the possibility of incrimination by statement." *State v. Leach*, 102 Ohio St.3d 135, 2004-

Ohio-2147, 807 N.E.2d 335, ¶ 40 (O'Connor, J., concurring). Such an inference would violate the Fifth Amendment. *See Mitchell* at 326-327 (any effort by the state to compel a defendant to testify at sentencing would clearly contravene the Fifth Amendment). And such an inference would go against the essential purpose of the right to remain silent — "to protect a defendant from being the unwilling instrument of his or her own condemnation[.] *Id.* at 329.

*Id.* at ¶ 81.

{¶ 62} Thereafter, the Court concluded that although a defendant has a right under Crim.R. 31(A)(1) to make a statement on his own behalf, "'renewed challenges to the adjudication are not a proper part of allocution.'" *Id.* at ¶ 82, quoting *State v. Beasley*, 2018-Ohio-493, ¶ 204. Thus, the *Brunson* Court continued, "[i]t is easy to see why a defendant who maintains his or her innocence may waive allocution, since allocution is not meant to serve as a time to renew challenges to guilt and a defendant cannot express remorse for a crime that he or she denies committing." *Id.*, citing *State v. Campbell*, 90 Ohio St.3d 320, 325 (2000). And, as previously stated, an expression of remorse is an acknowledgment of wrongdoing. *Id.* at ¶ 82.

{¶ 63} Based on this reasoning, the *Brunson* Court held that "when a defendant has maintained his or her innocence by pleading not guilty and has taken the case to trial, the trial court errs when it considers the defendant's silence to be a demonstration of that defendant's lack of remorse for purposes of sentencing under R.C. 2929.12(D)(5)." *Id.* at ¶ 83. "To consider the defendant's silence as a lack of remorse in this context would create a negative inference regarding the factual determinations in the case — an inference that is prohibited under *Mitchell*." *Id.*

{¶ 64} Howard maintained his innocence despite his presence at the scene of the shooting. Presumably, Howard believed he was not guilty because he did not aim his gun at either of the victims; he was found guilty under a complicity theory of criminal liability. Nevertheless, the following exchange took place between Howard and the court at sentencing:

> THE COURT: So you with five other friends armed drove across town, before entering a large block party, put on ski masks in July and began shooting. And you're trying to tell me that you are innocent because the State can't exactly prove that the bullet from the gun was in your hand as opposed to one of your other friend's hands where you had purchased three firearms.
>
> How are you not responsible for your actions that night?
>
> [DEFENSE COUNSEL]: On the advice of counsel, he will not be answering that question.
>
> THE COURT: He decided to make a statement. If you don't want to answer that question — my point is, is that you are not innocent. By your own admission, you participated in a group assault. You put on a ski mask to try to hide your identity and then you lied about it multiple times in different variations.
>
> So I don't understand how you can sit there and believe that you don't have blood on your hands. This is not something where this is a mistake in identity
>
> . . .
>
> THE DEFENDANT: I disagree that there's blood on my hands.
>
> That's all. I don't want to say nothing.
>
> . . .
>
> I just wasn't the one who did it. That's all I got to say, all I got to say.

(Tr. 1720-1721.)

{¶ 65} Later, the court continued:

And I'm looking at the recidivism factors. Your attitude is indicative of recidivism. . . .

[Y]ou say that your feel sorry for the victim's family, but they still don't know what compelled the six of you guys to go over there and shoot up that area. Nobody — nobody knows.

That's one thing that you could give in showing some sort of remorse. Even if it was not your gun or the gun that you were holding — it could have been your gun, but even it is wasn't your gun or the gun that you were holding that ended up killing Mr. [decedent], the least that you could do, because you were there, is explain what you were doing there and why you were there and why you had this coordinated effort to go to this party, put on ski masks and approach whoever — nobody knows who the target was at this point, but we know that the — that action to fire firearms into a crowd are knowingly — are known to you that somebody could die, and somebody did die, and that's why you you [sic] were found guilty of murder (B).

(Tr. 1726.)

{¶ 66} The court further stated, in relevant part:

And frankly, the sentence is more towards his continued claim of innocence as not taking responsibility as to being one of the six. He — he vehemently feels that he did nothing wrong. That's what I'm sentencing on.

(Tr. 1734.)

{¶ 67} These statements show that the trial court impermissibly considered Howard's silence as a lack of remorse and considered it as a recidivism factor. Therefore, the trial court erred in considering Howard's refusal to identify his accomplices and to disclose the location of his guns as a lack of remorse for sentencing purposes.

{¶ 68} In *Brunson,* the Court affirmed the defendant's sentence despite the trial court's error in considering the defendant's silence as a lack of remorse because

the defendant failed to demonstrate a reasonable probability that but for the trial court's consideration of his silence, his sentence would have been different. *Id.* at ¶ 84-87. The Court explained that "[a] defendant's lack of remorse is only one of five factors a trial court considers when evaluating the defendant's risk of recidivism under R.C. 2929.12(D)" and that because the other four factors indicated a high risk of recidivism, the error was harmless. *Id.* Obviously, the trial court may also consider other statutorily mandated sentencing factors when fashioning a sentence.

{¶ 69} Howard cites this court's decision in *State v. Jones*, 2025-Ohio-2144 (8th Dist.), in support of his argument that his sentence is contrary law because the court considered his silence as a lack of remorse. *Jones* is similar to this case in that the defendant in that case was convicted of murder under a complicity theory of criminal liability and she refused to identify the actual shooters, who remained at large. And, as in this case, the trial court in *Jones* impermissibly considered the defendant's silence as a lack of remorse. *Id.* at ¶ 55. However, in contrast to this case, there is no indication that the trial court in *Jones* considered other sentencing factors.

{¶ 70} In sentencing Howard, the trial court expressly stated on the record that it considered all the purposes and principles of sentencing. (Tr. 1724.) Indeed, the trial court indicated it was not imposing the maximum sentence Howard could have received due to his young age and because he did not have an extensive criminal record. (Tr. 1728.) Still, the court concluded that the seriousness of Howard's conduct justified the sentence it ultimately imposed. (Tr. 1724.) The court

recounted how Howard fired his gun in public on multiple occasions. The court also considered the manner in which Howard and his accomplices coordinated the attack on the block party as being very serious. (Tr. 1724 and 1727.) The court observed:

> Your conduct was extremely serious in each instance. It was repetitive conduct. And the danger that you posed to the public — and you just think about all of the people at that party, all of the people at that park, the amount of potential victims just is astonishing.

(Tr. 1727.) Although Howard did not have an extensive criminal history, the presentence investigation revealed that Howard had a moderate likelihood of reoffending. Therefore, in contrast to *Jones*, the record in this case is replete with other sentencing factors that justify the court's judgment. Based on the record in this case, we do not find a reasonable probability that but for the trial court's erroneous consideration of Howard's silence as a lack of remorse, the outcome of the sentencing hearing would have been different.

{¶ 71} Therefore, the fourth assignment of error is overruled.

## E. Consecutive Sentences

{¶ 72} In the fifth assignment of error, Howard argues the trial court's imposition of consecutive sentences was in error because the court's findings are not clearly and convincingly supported by the record.

{¶ 73} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds

that (1) "the record does not support the sentencing court's findings under R.C.2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law." The imposition of consecutive sentences is contrary to law if a trial court fails to make the findings mandated by R.C. 2929.14(C)(4). *State v. Morris*, 2016-Ohio-7614, ¶ 24 (8th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

{¶ 74} Under R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public, and (3) at least one of the following applies: (a) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 75} Howard does not dispute the fact that the court made the findings necessary for the imposition of consecutive sentences; he contends the findings are not supported by the record. "Where the trial court made the requisite consecutive sentencing findings, R.C. 2953.08(G)(2) requires this court to affirm an order of

consecutive service unless we 'clearly and convincingly' find that the record does not support the court's consecutive sentences findings." *State v. Clay*, 2020-Ohio-1499, ¶ 17 (8th Dist.), quoting *State v. Simmons*, 2019-Ohio-459, ¶ 11 (8th Dist.).

> Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 76} The record in this case shows that Howard was involved in four separate shootings in one year. The evidence adduced at trial showed that Howard shot in public areas near unarmed people three times in less than one month. All of the shootings took place in crowded places. It is unusual that a person would fire a gun in the presence of a crowd of unarmed citizens three times in one month. And, as previously stated, Howard and his accomplices crept up on a large group of unsuspecting partygoers and opened a barrage of gunfire on them, which resulted in one death and one serious injury.

{¶ 77} Under the totality of these circumstances, we are unable to clearly and convincingly find the record does not support the trial court's findings under R.C. 2929.14(C)(4), or that the sentence is otherwise contrary to law. In addition, the trial court's findings were properly incorporated into the sentencing journal entries as required under *Bonnell*.

{¶ 78} The fourth assignment of error is overruled.

{¶ 79} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, A.J., and
MARY J. BOYLE, J., CONCUR